SAMUEL ENSWORTH, Appellant, *v.* THOMAS L. KING *et al.*, Respondents.

| 50 | 477 |
|----|-----|
| 96 | 225 |
| 50 | 477 |
| 51a | 185 |
| 50 | 477 |
| 125 | 563 |
| 50 | 477 |
| 149 | 582 |
| 150 | 311 |
| 76a | 130 |

1. *Lien.— Judgments — Attachments — Priority.— Stay of execution — Real and personal property.* — The lien of an attachment on lands, after judgment against the defendant on the plea in abatement, takes effect from the date of the levy of the attachment, and has priority over a junior judgment; and a stay of execution, under judgment on an attachment, does not have the effect of removing or postponing the lien as to lands. The lien is created by the levy of the attachment and fixed by the judgment. In cases of personal property the principle is different. There the lien arises out of the execution, and after levy the property is in the custody of the officer, and other parties are precluded from taking or intermeddling with it. But if the plaintiff sees fit to direct the officer to hold up the judgment and not proceed to satisfy the writ, he cannot continue to hold the lien.

2. *Mortgage, validity of—Assent of mortgagee.* — Where an instrument is executed in favor of a party for his benefit, he will be presumed to assent thereto until he manifests his dissent, after being duly notified.

3. *Fraudulent conveyances — Preference.* — A debtor has the right to prefer one creditor over another, and his acts in that respect cannot be questioned, providing that he does nothing with a fraudulent intent, or which operates to hinder or delay his other creditors.

## *Appeal from Buchanan Circuit Court.*

*Ensworth & Loan*, for appellant.

I. The judgment in the court below declaring the deed of John W. Breckenridge, Lafayette Ardry and Adam Breckenridge, as well as plaintiff's deed from Ardry and Breckenridge, void, is erroneous. 1. The intent of the parties to a deed always governs as to the nature of the deed. (Sibly v. Hood, 3 Mo. 206 ; Brant v. Robertson, 16 Mo. 145 ; Wilson v. Drumrite, 21 Mo. 325 ; Turner v. Kerr, 44 Mo. 429.) 2. There was no issue against the *bona fides* of the mortgage, and no evidence to support such an issue. 3. The deed was made to secure a debt, which is a good consideration to uphold the deed, and it is therefore not voluntary. (Woodson v. McClelland, 4 Mo. 495 ; Gamble & Johnston v. Johnson, 9 Mo. 628 ; Eaton's Adm'r v. Perry, 29 Mo. 96.) 4. If fraud had been alleged it had to be proved. There is not a scintilla of evidence proving fraud. Fraud cannot be presumed. (Dallam v. Renshaw, 26 Mo. 533.) 5. To justify setting aside a deed for fraud, the grantor must have executed it for the purpose and with the intent to defraud, and this must appear in the pleadings and evidence. (Gates v. Lebeaume, 19 Mo. 17; Spencer v. Deagle, 34 Mo. 457–458 ; Joliffe v. Collins, 21 Mo. 342.) 6. Breckenridge had a right to prefer the grantees in the deed of mortgage over his other creditors, and it is not evidence of fraud. (Duvall *et al.* v. Raisin, 7 Mo. 449; Chouteau v. Sherman, 11 Mo. 389 ; Sibly v. Hood, 3 Mo. 206 ; Cason v. Murray, 15 Mo. 378.) 7. If the deed of Lafayette Ardry and Adam Breckenridge was void or voidable for fraud, appellant's deed is not vitiated thereby unless he had notice of the fraud in the deed of J. W. Breckenridge to Ardry and Breckenridge. (Knox v. Hunt, 18 Mo. 174, 176, 178, 180.)

II. The decree is erroneous in giving the judgment confessed in the attachment suits priority of lien over the judgment belonging to and claimed by appellant. The agreement and confession of judgment, with the stay of execution for twelve months, is a dissolution of the attachment. It is an intermeddling which obstructs the execution of the law, because there is no chance to execute the judgments by appropriate process.

The attachment is only to hold property until it can be sold under execution at the termination of the suit. (R. C. 1855, ch. 12, p. 236, §§ 1, 22, 42 ; Gen. Stat. 1865, ch. 141, p. 560, §§ 1, 23, 36 ; also Drake on Attachment, §§ 227, 237, and citations.) It takes the judgment and execution in an attachment suit to hold the property attached after trial and judgment. (R. C. 1855, ch. 12, p. 520, § 42.)

An attachment will hold only such property as is subject to execution. (R. C. 1855, ch. 12, § 19 ; Drake on Attachments, § 27 and citations.) The statute of 1855 is the statute that governs this case.

A lien by attachment, or any other lien created by law, is dissolved by an agreement entered into by the person who has the benefit of the lien suit and the person whose property is affected by the lien, to delay the process of law for a specified time, because the law thereby becomes inoperative and the property cannot be held by its process. The statute must be strictly pursued.

2. The giving time in consideration of different security is a discharge of the first lien. (Gorman v. Sagner, 22 Mo. 138 ; 7 J. J. Marsh. 528 ; C. R. 558.) The plaintiffs in the attachment argued, in consideration of the confession of judgment, that execution should not issue, and thereby discharged the attachments.

When attached property passes out of the custody of the law it is relieved from the attachment. (Drake on Attachment, § 268 ; *id.*, ch. 11 and 12.) Property attached, which passes to third persons with the assent of plaintiff's attorney, is discharged from the attachment. (*Id.*, §§ 239, 262 and 282, and citations.) The officer must hold the property under his control, so as to have it subject to be taken on execution of a judgment in the case,

or the attachment is discharged. (*Id.*, §§ 183, 321, 388, 390, and citations of each.)

The object of the attachment is to take the property out of the control of the defendant and keep him from the discharging of it. The agreement between Breckenridge and his attaching creditors defeats this, and shows it was intended to defeat the very object of an attachment. It gave the defendant control of the property. The proceeding by attachment is the exercise of a right created by statute, and to derive the benefit of it the statute must be strictly pursued. (Wright's Ohio, 566 ; Hardin's Ky. 94.) The principle that the property should be kept in custody of the law to preserve the lien is in keeping with other lien laws. If, for instance, factors, pawnbrokers, landlords, manufacturers, mechanics and others have liens, they are lost when the owner once gets possession of the property. Executions lose their lien even after levy, if stopped by the plaintiff therein.

*Strong & Hedenburg*, and *Chandler*, for respondents.

The judgments taken in the attachment suits by the respondents were not judgments taken upon compromise and confession, but, on the contrary, were judgments by default taken as in ordinary attachment suits, and the only compromise in the matter was the withdrawal of the pleas in abatement, and as a consideration therefor, a stay of execution for twelve months. The judgment in the attachment suit related back to the date of levy in 1861. (Lackey v. Seibert, 23 Mo. 85.) The judgments were liens upon the real estate for five years after the date of the rendition, and related back to date of the levy of the writs of attachment in 1861. The plaintiff's judgments were dated in 1864 and 1865, and were junior in lien to the attachment judgments recovered by respondents. Execution may issue upon a judgment at any time. Sections 15 and 16, Gen. Stat. 1865, p. 904, provide that sale of lands under a junior judgment or decree shall pass the title of the defendant, subjected to the lien of all prior judgments and liens then in force, and the money arising from such sale shall be applied to the payment of the judgment or decree under which the same may have been made.

WAGNER, Judge, delivered the opinion of the court.

The first question that we will notice is the priority of liens in the respective judgments. It seems that the plaintiff was the owner of several judgments against one Breckenridge, but that some time previous to their rendition a number of suits had been commenced against Breckenridge by attachment, and all his real estate was levied upon, but they had not at that time been prosecuted to final judgment. The levy was made at the date of the attachments, prior, in point of time, to the plaintiff's judgments. At the trial of one of the attachment suits a plea in abatement was interposed by the defendant, and upon issue joined, the verdict and judgment was for the plaintiffs. The defendant was then about to apply for a continuance in the other attachment suits, and it was mutually agreed that if he would not do so, but would waive his pleas in abatement in the other suits and permit judgment to go for plaintiffs, there should be a stay of execution for twelve months. This arrangement was accepted and deemed satisfactory between all parties. The plaintiff herein, who owned the judgments as spoken of above, was one of the attorneys and advisers of the defendant, and recommended and acquiesced in the agreement. The evidence is too clear to leave room for doubt that it was expressly admitted and agreed at the time by all the parties that the arrangement would not have the effect of impairing or altering the liens of the attachment suits.

It is shown conclusively that all the parties believed, and were under the impression, that Breckenridge's property was abundant to pay off all his liabilities, and the extension of time was merely for the purpose of enabling him to dispose of it to good advantage, and without making a sacrifice.

It is now contended by the plaintiff that the agreement to take judgments on the attachment suits and stay executions thereon, had the effect of postponing the liens in those cases and giving his judgment the priority. The attachment suits here operated on real estate, and the liens dated from the time of the levy. The levy was made on all the real estate owned by the defendant in the suits, and the voluntary withdrawal of the pleas in abatement

31—VOL. L.

simply allowed the judgments to be taken by default, and did not interrupt the continuity of the lien. Nor do we think the agreement for a stay of execution had the effect of postponing the lien and giving a preference to the plaintiff's judgments. Had the subject of the levy been personal property, a different principle would govern; for it is held that where, in the case of personal property, a plaintiff directs an officer to hold up his execution, and not to sell or proceed to make the money until he shall give further orders, and until he shall find younger executions crowding in, such acts render the execution dormant and fraudulent as to subsequent executions. (Field *et al.* v. Livermore, 17 Mo. 218.) But the distinction between liens in cases of real estate and personalty is palpable and well defined. In the one case the judgment confers the lien; in the other it arises out of the execution.

When an execution is levied on personal property, the property is thenceforth in the custody of the officer, and other parties are precluded from taking or intermeddling with it. If the plaintiff sees proper to direct the officer to hold it up and not to proceed to satisfy the writ, junior judgment creditors may be kept out of their rights and retarded in their collections indefinitely. This would work a fraud which the law will not sanction. But in the case of real estate there can be no such hindrance. A junior judgment creditor, by the provisions of the statute, can levy his execution and proceed to sell lands at any time, the sale being made subject to the prior lien.

The plaintiff presents himself here with no equities in his favor, for I think the evidence shows very fully that he advised the attachment creditors to pursue the course which they did, and assured them that their priority would be preserved by the arrangement which they entered into. That part of the decree in the court below which found that the judgments in the attachment suits were entitled to the first lien, was, I think, correct. The next question relates to the action of the court in declaring the mortgage made by Breckenridge to Ardry void.

It appears that Breckenridge was indebted to Ardry, who resided in the State of Kentucky, and to secure him in the payment

Ensworth v. King et al.

of his debt he executed a mortgage on certain real estate in this State, and placed the same on record on the same day on which the instrument was acknowledged. This mortgage was executed and recorded before the attachment suits were commenced, but it is not shown that Ardry, the grantee therein, had notice of the same until after the suing out of the attachments, but when he was notified thereof he assented to and ratified the same. He subsequently assigned the mortgage to the plaintiff in this case, who paid him therefor the sum of $1,505, the full amount of the debt it was made to secure.

It is insisted that the mortgage was absolutely void because made without the previous knowledge of the grantee, and that the plaintiff therefore acquired nothing by his purchase. And this was the view taken of the transaction by the court.

The general rule is that where an instrument is executed in favor of a party for his interest, he will be presumed to assent thereto until he manifests his dissent, after being duly notified. That the mortgage was honestly and fairly made for the purpose of securing a just debt is not attempted to be denied, nor is there anything to show that it was intended to delay or defraud creditors. No such pretense is set up by the parties combating its validity. The case shows that Breckenridge was merely anxious to secure this debt; that he had a large quantity of real estate, and the parties all subsequently believed that he had enough to pay all his debts and have something left. The record is utterly barren of all facts which have even a tendency to impeach the good faith of the transaction. Breckenridge had the right to prefer one creditor to another, and his acts in that respect cannot be questioned, providing he did nothing with a fraudulent view, or which operated to hinder or delay his other creditors.

Nothing of the kind is pretended or set up. I think the court committed error in pronouncing the mortgage entirely void, and for this reason the judgment will be reversed and the cause remanded. Judge Bliss concurs. Judge Adams absent.