SULLIVAN V. THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY, *Appellant.* ·

| 88 | 169 |
| 97 | 661 |
| 97 | 662 |
| 33a | 588 |
| 88 | 169 |
| 35a | 581 |
| 88 | 169 |
| 50a | 178 |
| 50a | 310 |
| 88 | 169 |
| 116 | 247 |
| 88 | 169 |
| 57a | 160 |
| 88 | 169 |
| 127 | 452 |
| 88 | 169 |
| 64a | 312 |
| 88 | 169 |
| 65a | 134 |
| 88 | 169 |
| o96a | 207 |

1. **Practice** : INSTRUCTIONS : NEGLIGENCE. In an action for injuries resulting from the alleged negligence of defendant, and in which the issue of plaintiff's contributory negligence is made, an instruction is erroneous which hypothecates the facts as to defendant's negligence, and authorizes a verdict for plaintiff therein without in the same instruction limiting such right of recovery to the absence of such contributory negligence on the part of plaintiff.

2. ———: ———: ———. Such defect in the instruction is not cured by other instructions given in the case which so limit plaintiff's right of recovery if he was guilty of contributory negligence (Black and Norton, JJ., dissenting).

*Appeal from Jackson Special Law and Equity Court*
HON. R. E. COWAN, Judge.

REVERSED.

*G. W. Easley* for appellant.

(1) The first instruction given on behalf of the plaintiff, is an authorization of a verdict for the plaintiff, and is erroneous in the following particulars : (*a*) It ignores the question of plaintiff's knowledge of the defect, and authorizes a verdict for the plaintiff without requiring the jury to pass on the question of whether the plaintiff knew of the broken or cracked tie beam or not. In connection with the third instruction given for the plaintiff, and the seventh refused for the defendant, it authorized a verdict for the plaintiff, although he knew of the defect. *Waldhier v. Railroad*, 71 Mo. 519. Before plaintiff could maintain this action he should have proven that he was not aware of the defect prior to the injury. And an instruction that authorizes a finding for the plaintiff, without submitting the question of such

knowledge to the jury, is erroneous. *Nolan v. Shickle*, 3 Mo. App. 300 ; 69 Mo. 336. (*b*) This instruction is further objectionable in that it bases the plaintiff's right to recover upon the doctrine of *respondeat superior*, and not upon negligence. By this instruction defendant is made liable solely because its servant did not make a safe scaffold, and the instruction bears no intimation of liability because of any negligent act, and it was, therefore, erroneous. *Crispin v. Babbitt*, 81 N. Y. 520 ; *McDermott v. Railroad*, 30 Mo. 117 ; Cooley on Torts, 557 ; Wood on Master and Servant, sec. 429 ; *Moss v. Railroad*, 49 Mo. 170. (*c*) The instruction was erroneous in that it rests the case on the ground that the defendant furnished the broken or cracked tie beam as an appliance as part of the scaffold. *Chicago, etc., v. Ward*, 61 Ill. 130 ; 12 Am. Ry. Rep. 434 ; *Watson v. Houston*, 11 A. & E. R. R. Cases, 216. (*d*) This instruction also ignores the question of whether it was necessary for the plaintiff to step upon the defective tie beam, in the necessary and proper discharge of his duties, and this in the face of the evidence, that "it was not necessary for any one to walk out on that tie beam. The other pieces were put there for the men to walk out on." (*e*) This instruction does not put upon the jury the duty of ascertaining the cause of plaintiff's injury. It authorizes a verdict against defendant without requiring the jury to determine whether it arose from the alleged defect, or from the plaintiff's negligence, which, being pleaded, could not be ignored in plaintiff's instructions. *Gilson v. Jackson Co. Horse Ry.*, 76 Mo. 282. (*f*) The court erred in giving the second instruction for plaintiff, and in refusing those numbered three, four and five, asked by defendant. The relation between the foreman, Prather, and the plaintiff, was that of fellow servants. Smith's M. & S. (3 Eng. Ed.) 208, and note ; Whart. on Neg., sec. 228-3 ; Cooley on Torts, 562 ; *Hoke v. St. Louis, etc., Ry. Co.*, 11 Mo. App. 574 ; *Keystone Bridge Co. v. New-*

*berry*, 96 Pa. St. 246; 42 Am. Rep. 543; *Blake v. Rail-road*, 70 Me. 60; 35 Am. Rep. 297; *McDermott v. Boston*, 133 Mass. 349; *Kelly v. Norcross*, 121 Mass. 508; *Summersell v. Fish*, 117 Mass. 312; *O'Connor v. Roberts*, 120 Mass. 227; *Brown v. Winsna, etc., Ry. Co.*, 27 Minn. 162; 38 Am. Rep. 285; *Walker v. Boston, etc., Railroad*, 128 Mass. 8. (*g*) The eighth instruction asked by the defendant should have been given. The issue tendered by the petition was that plantiff was wholly unaware that the scaffolding was unsafe. The theory of the court below was, as shown in the refusal of this eighth instruction, that the plaintiff had to have actual knowledge of the want of safety of the scaffold, and why it was unsafe, that is, the defect that rendered it unsafe. "Absolute knowledge in the strict sense of the term, imports so high a degree of certainty as to the matter to be established that to require it in every instance would render the adjustment of differences between man and man on any just basis, practically impossible." Wade on Notice, p. 3, sec. 3.

*Warner & Tichenor* for respondent.

(1) "If there are special risks in an employment of which the employe is not, from the nature of the work, cognizant, or which are not patent in the work, it is the duty of the employer specially to notify him of such risks, and on failure of such notice, if he is hurt by the exposure to such risks, he is entitled to recover from the employer." Whar. on Neg., sec. 206. "It is his duty to give the employe a place where he can work free from danger, of which he has not notice. *Ib.*, sec. 209; *Elliott v. Railroad*, 67 Mo. 272, and cases cited in opinion; *Whalen v. The Cen. Church*, 62 Mo. 326. (2) It was not required of plaintiff that he should have looked for defects in the scaffolding. *Porter v. Railroad*, 60 Mo. 160; *Dale v. Railroad*, 63 Mo. 460. (3) The foreman was not a fellow servant with plaintiff. *Hall v. Rail-*

*road*, 74 Mo. 298, and cases cited in opinion; *Whalen v. The Cen. Church, supra.* (4) In any event the duty as to the master furnishing proper machinery is so far personal that responsibility for injuries directly caused by the negligent discharge of it, exists although the master may for his own convenience act through other servants. *Long v. Railroad*, 65 Mo. 229; *Lewis, Adm'r, v. Railroad*, 59 Mo. 495; *Gibson v. Railroad*, 46 Mo. 163; *Dillon v. Railroad*, 3 Dillon, 323, and note page 327; *Gilman v. Railroad*, 13 Allen, 44, and cases cited; *Lancing v. Railroad*, 49 N. Y. 521; *Packet Co. v. McCune*, 17 Wall. 508. (5) The law presumes plaintiff was in the exercise of ordinary care at the time he was hurt, *Buesching v. The St. Louis Gas Light Co.*, 73 Mo. 229, and whether a person injured by the negligence of another who was exercising ordinary care, is a question to be determined by the jury either where the facts are disputed or where there is a dispute or reasonable doubt as to the inferences to be drawn from undisputed facts. *Vogel v. Railroad*, 75 Mo. 665; *Frick v. Railroad*, 75 Mo. 600; *Buesching v. The St. Louis Gas Light Company, supra.*

*Silver & Brown* and *Thos: T. Crittenden* for respondent on re-hearing.

(1) The authorities cited by the learned judge in support of his opinion we submit do not sustain him. They, and their cognates, will be found, on examination, to range themselves under one or the other of the following heads: (*a*) Where the instruction criticised undertook to present the whole ground of recovery while it failed to hypothecate all the facts embraced in the issues necessary to make out plaintiff's *prima facie* case. (*b*) Where the instruction omitting the whole of the facts in issue directs a verdict, and there are no other

instructions given presenting the issuable facts to the consideration of the jury. (c) Where the instruction given misstates the law, and the party then undertakes to cure the defect by giving another correct declaration of law. In *Goetz v. Railroad*, 50 Mo. 472, Judge Bliss draws the distinction sharply : "An instruction in itself erroneous cannot be supplied by another. One that gives a part of the case may be, but there should be no contradiction." Now, in plaintiff's first instruction, there was no misstatement of any legal proposition. It properly declared the law as applicable to the facts predicated. It was good law as applied to plaintiff's *prima facie* case, and the other instructions given simply told the jury, that although they might find the facts to exist stated in the first instruction, yet if they found that the plaintiff was himself negligent as well as the defendant, he could not recover. So in *Raysdon v. Trumbo*, 52 Mo. 38, only a part of the facts in issue were presented in any of the instructions given. The court cites *Chappell v. Allen*, 33 Mo. 213, in which Wagner, J., p. 222, expressly says : "The error complained of was not cured by any counter instruction given on the other side." *Sawyer v. Railroad*, 37 Mo. 240, does not support the opinion at bar. The observation of the court, page 263, clearly shows that, although the plaintiff had omitted to predicate in his instruction the right of recovery on the whole of the evidence or issue, yet if defendant's side of the case had been fully presented in other instructions there would have been no reversible error. So the same thing is true of *Clark v. Hammerle*, 27 Mo. 55. In that case defendant sought to defend his possession of the land in question, on the ground of its abandonment by plaintiff or those through whom he claimed ; plaintiff's instruction did not present this defence, and defendant's instructions as to same were not given. Says Judge Scott in his opinion, 27 Mo. 71, "the

defendants being so unfortunate as to have all their in-
structions on the question of abandonment rejected by
the court, the court was not, therefore, warranted in put-
ting the case to the jury in such a way as would exclude
the consideration of the effect of the evidence given by
them on the subject of abandonment." In *Goelz v. Rail-
road*, 50 Mo. 472, plaintiff's instruction failed to hypoth-
ecate a fact essential to make out his *prima facie* case.
In *Iron Mountain Bank v. Murdock*, 62 Mo. 70, Judge
Sherwood, who delivered the opinion of the court, ex-
pressly says : "And this lack in the instruction was not
supplied by any others." In *Henry v. Basset*, 75 Mo.
89, none of the instructions presented properly the issue
of abandonment of the contract involved in that case.
(2) It has been the uniform ruling of this court that when
a series of instructions taken together contain a correct
exposition of the law, it is sufficient, and that this is so
although the instructions taken separately may be ob-
jectionable.    *Williams v. VanMeter*, 8 Mo. 342 ; *Pond v
Wyman*, 15 Mo. 175 ; *Gamache v. Piquignot*, 17 Mo.
310 ; *State v. McClure*, 25 Mo. 338 ; *Galena & Co. v.
Vandergrift*, 34 Mo. 62 ; *Kennedy v. Railroad*, 36 Mo.
351 ; *Moore v. Sinbosin*, 42 Mo. 490 ; *McKeon v. Rail-
road*, 43 Mo. 405 ; *Marshall v. Fire Insurance Co.*, 43
Mo. 586 ; *Sears v. Wall*, 49 Mo. 359 ; *Thompson v. Rail-
road*, 51 Mo. 190 ; *Budd v. Hoffheimer*, 52 Mo. 297 ;
*Porter v. Harrison*, 52 Mo. 524; *Loyd v. Railroad*, 53
Mo. 509 ; *Karle v. Railroad*, 55 Mo. 476 ; *Clements v.
Maloney*, 55 Mo. 352 ; *Henschen v. O'Bannon*, 56 Mo.
291 ; *Meyer v. Railroad*, 59 Mo. 223 ; *Kitchen v. Rail-
road*, 59 Mo. 514; *Whalen v. Railroad*, 60 Mo. 323 ;
*Edwards v. Carey*, 60 Mo. 572 ; *State v. Moore*, 61 Mo.
276 ; *Krech v. Railroad*, 64 Mo. 172 ; *Tate v. Railroad*,
64 Mo. 152 ; *Nelson v. Foster*, 66 Mo. 381 ; *Parton v.
McAdoo*, 68 Mo. 327 ; *Brown v. Insurance Co.*, 68 Mo.
133 ; *Wilson v. Railroad*, 71 Mo. 203 ; *Buesching v.*

*Gas Light Co.*, 73 Mo. 219 ; *State v. McGinnis*, 76 Mo. 326. (3) The same rule prevails in criminal cases where the life and liberty of the citizen is at issue. *State v. McClure*, 25 Mo. 338 ; *State v. McGinnis*, 76 Mo. 326, *People v. Doyell*, 48 Cal. 93 ; *People v. Morine*, 61 Cal. 372. (4) In plaintiff's first instruction, there was no misstatement of any legal proposition. It properly declared the law as applicable to the facts predicated. It was good law as applied to plaintiff's *prima facie* case. This identical question has been twice passed upon by this court favorably to respondent. *McKeon v. Railroad*, 43 Mo. 405 ; *Karle v. Railroad*, 55 Mo. 476 ; see; also, to same effect, *Kennedy v. Railroad*, 36 Mo. 351 ; *Whalen v. Railroad*, 60 Mo. 327. (5) Contributory negligence in this state is a matter of affirmative defence. *Thompson v. Railroad*, 51 Mo. 190 ; *Loyd v. Railroad*, 53 Mo. 509; *Buesching v. Gas Light Co.*, 73 Mo. 219. It being a matter of defence, the plaintiff is not called upon to invoke it in his instructions in behalf of defendant. (6) The defendant itself tried the case on the theory that knowledge of the defect in the scaffolding was a bar to a recovery, and it has nothing to complain of in this court. *Crutchfield v. Railroad*, 64 Mo. 255 : *Leabo v. Goode*, 67 Mo. 126.

RAY, J.—This is an action for damages, for personal injuries sustained by the plaintiff, who is a carpenter, and who was engaged, at the time, with other carpenters, under a foreman named Prather, in taking down an ice house for defendant, in Kansas City, Missouri. The petition charges that, in order to take off the roof of said ice house, defendant furnished for plaintiff, and his fellow workmen, scaffolding which consisted of planks, placed upon tie beams. That said scaffolding was defective, insufficient and insecure, and improperly constructed ; that it was constructed of planks that were too

short, and that the plank rested on a tie beam, in which there was a large knot, which rendered it weak and unfit for the support of the scaffold, and that, on account of such weakness, a part of said tie beam, upon one end of which said scaffold rested, fell down, leaving one end of the scaffold without support. That defendant knew of the defect in the beam, and of the unsafe and dangerous condition of the scaffold, and failed to provide against said defects, and failed to notify plaintiff of the same, but suffered him, while wholly unaware of danger, to step upon the scaffolding, which immediately gave way and precipitated him to the ground, etc. The answer was a general denial, and, also, a plea of contributory negligence on the part of the plaintiff, which was denied generally in the plaintiff's replication. The carpenters began the work of taking down the ice house about seven o'clock in the morning of February 18, 1878. In the division of the work, it seems that the plaintiff and two of the others went on to the roof to saw the same in sections, while Prather and the rest went inside the building to fix the uprights and staying. During the forenoon, and about ten o'clock, something was heard to crack, and the foreman, Prather, who was then on the roof with Sullivan, after ascertaining the condition of the tie beam, had a section of the roof (the first one, perhaps, that had been sawed out) let down and placed over it, so that the section lay over it as a scaffold. Plaintiff, as well as the others, assisted in letting down the section, and it remained there during the day, until all the other sections that had been sawed out, except one or two, perhaps, had been taken down. While the carpenters were engaged, about three o'clock in the afternoon, in removing the said section which had been let down in the morning to cover the tie beam that had the knot hole, and had cracked, the plaintiff stepped onto a part of the defective beam, and was immediately thrown down and suffered severe

and permanent injuries. Such portions of the evidence as we deem material will be noticed hereafter.

As to the instructions given for the plaintiff, we may say that the second, which relates solely to the question whether Prather, the foreman, was a fellow servant or representative of the defendant; and the fourth, which relates to the measure of damages, are, in the view we have taken of the case, immaterial, and are, therefore, omitted. The first and third are as follows :

"1. The jury are instructed that if you believe, from the evidence, that in the ice house in question the tie beam ran from one side of the building to the other, and consisted of two pieces of timber, or lumber, which were spliced or beamed together at the middle of the building, and that defendant, in order to take off the roof of said house, furnished plaintiff and his fellow workmen scaffolding, which consisted of planks placed upon said tie beams, and that said scaffolding was defective, insufficient and insecure, and by being so constructed that the plank rested upon a tie beam in which was a large knot which rendered it weak, and which was not fitted for the support of a scaffold, and that by reason of said weakness a part of said tie beam, upon one end of which said scaffold rested, gave way and fell down, leaving one end of said scaffolding wholly without support and in a dangerous condition, and that the foreman of defendant knew of said tie beam being in such a weak and insecure position, and that he knew it had become cracked, broken and unsafe, and that he knew of all said facts for such a length of time before the happening of the injury in question, that he could have, by the exercise of ordinary care and prudence, remedied said defect, and thereby prevented the injury, then you can find for the plaintiff."

"3. The jury are instructed that, while it is true

that if plaintiff was aware of the defect in the scaffolding in question, and that said defect was so glaringly defective that a man of common prudence, or common sense, would not have gone upon the same, then he cannot recover; yet, you are further instructed that if plaintiff did not know of the dangerous character of said defect, and that the foreman of defendant did know of it, and did make any statement in the hearing of plaintiff, to the effect that the defect in the tie beam was not unsafe or dangerous, and that plaintiff relied upon the same, then plaintiff was not guilty of such contributory negligence as will preclude a recovery on part of plaintiff, providing you believe plaintiff was directed by said foreman to do the work which obliged him to go upon said scaffolding.''

It is not necessary, we think, to set out in this case defendant's instructions, given or refused. The plaintiff had a verdict for seven thousand dollars upon which judgment was duly entered, and defendant appealed the cause to this court.

It will be observed that the condition of the tie beam and scaffolding, whether the same were weak and broken, defective, insecure and dangerous, and, also, the knowledge of the foreman in relation thereto, are all properly submitted to the jury in the first instruction, and there was ample evidence showing, or tending to show, the facts thus submitted, but the contributory negligence of plaintiff, which was set up in the answer, and his knowledge, if any, of the defective and dangerous condition of the tie beam and scaffold, which was within the issues made, as to whether or not he "stepped on the tie beam wholly unaware of danger," and entirely ignored by this instruction, and a verdict authorized for plaintiff without regard thereto. Upon the trial, the plaintiff testified, on cross-examination, among other things, as follows:

Q. "There were planks laid along there on the tie beams?" A. "I don't know. I stopped right there; that is, over this broken tie beam." Q. "You did not know what it was that was broken; when did the foreman tell you this?" A. "Before it broke. He said there is a knot there, but he thought it was safe." Q. "He told you before this fall that it was broke, but l e thought it was safe?" A. "Yes sir." Q. "You heard this before you went on it, did you?" A. "Yes, sir." * * * Q. "How long before the fall did you hear him say this about this knot-hole?" A. "Some four hours before that. That was the first section we took down." Q. "How came it you laid this section down and left it and took down the others first?" A. "The foreman told us something cracked about ten o'clock. The foreman went down and satisfied himself that something was unsafe. He said some of the men said it had to be repaired. He said to let down that section of roof and make a staging of it." * * * Q. "Now I want to ask you if the foreman did not state that he let the staging down there to cover the defect, to keep from getting on this defect?" A. "He went down and saw this, and we did not know the extent of the break. He went down and looked at it, and saw it and said there was a bad place. He had seen it before, but he did not think it would break. He said some of the men spoke to him about fixing it, and he said it was not necessary, the section could be let down and cover it."

The witness Spees, introduced by plaintiff, testifies: Q. "Do you know what time of day this crack occurred in this tie beam?" A. "I couldn't tell about the time it occurred. I noticed it some little time before we commenced moving the section. I think I called the foreman's attention to it. I told him we had better put something on it to make it more secure. I did not think

it was safe for men to go on.   I told him I would not go on; I don't know whether I told the foreman I wouldn't go on."   And on cross-examination as follows : Q. " You recognized the statement as being true at the time you signed it ?"   A.  " Yes, sir."   Q.  " No one asked you to put anything on there that wasn't true ? " A. " I suppose all the men knew this was broken.  They were not all present when I spoke about this."   Q.  " At the time, I understand, he knew about it ? "   A.  " I don't know whether he knew or not.   The idea is, I am particular about going on staging, and caution my men." Q.  " If Sullivan had been as prudent as you, he could have seen it."   A.. " He could certainly, if he had gone below."

" The statement " referred to was one made out by Prather the day after the accident, and signed by him and the plaintiff's witnesses, Flint and Spees, as well as the other carpenters, except plaintiff.   The said witnesses were questioned about it by the plaintiff's counsel, and the circumstances under which it was signed and the purpose of it were detailed in their evidence. It was afterwards introduced in evidence by the defendant.   Among other things it says " that all the men were told and saw for themselves that the piece beneath the section of the roof was broken and unsafe to stand on, and when this section was moved, Mr. Sullivan unthoughtedly stepped on the broken piece and fell." Prather, introduced by defendant, testifies upon the point:  Q.  " What was said about that broken tie beam ? "   A.  " There was nothing more said until we got on the building.   That was probably ten o'clock, when we let down that section of roof, and broke this (shows).   It was said we would let the section of roof down, and let it remain for a staging over that defective beam.   That was the purpose.   I think every one present knew it.   They were all present letting down that sec-

tion of roof and leaving it there." Q. "State what oc-
curred just before the accident happened. Where was
Sullivan standing then, with reference to the section of
roof?" A. (Shows on diagram where Sullivan was
standing). Q. "State whether or not it was necessary
for him to go out there for the purpose of removing this
roof." A. "There was no necessity for his going out
there at all." Q. "That tie beam was so defective that
you think they all talked about it." A. "We all talked
about it." Q. "Didn't you say 'I think everybody
there talked about the beam?'" A. "We all talked
about it." Q. "You state that Mr. Flint spoke to you;
state whether Mr. Spees and Mr. Sullivan could have
heard what was said between you?" A. "Yes sir, they
could." Q. "Were they as near to him as you were?"
A. "They were nearer to him."

We do not undertake to pass upon the probative
force and value of the foregoing evidence as against
other statements and evidence to the contrary in the
record; but it is clear, we think, that the same is
legitimate and competent under the issues made and in-
volved, and was admitted and received in evidence, as
such and for that reason. But it is also equally clear,
we think, that the defendant may have been and was
prejudicially deprived of its benefits; because, under
said first instruction, said evidence, which constituted
the defence, was, in effect, excluded from the considera-
tion of the jury. They were, as already stated, upon a
finding as to the character and condition of the mate-
rials furnished and used by defendant, and the foreman's
knowledge thereof and conduct in relation thereto,
which were the only questions submitted, authorized by
this instruction to find the issues for the plaintiff
without being thereby further required to pass upon
and consider the conduct of the plaintiff in the premises,
and the plaintiff's knowledge, if any, of the broken tie

beam and the unsafe and dangerous condition of the scaffolding. We do not think a conclusion upon the whole case was, under the issues and evidence, author- ized by a finding as to the facts thus submitted. *Gilson v. The Jackson Co. Horse Ry. Co.*, 76 Mo. 282; *Fitzgerald v. Hayward*, 50 Mo. 516; *Sawyer v. Rail- road*, 37 Mo. 240; *Clark v. Hammerle*, 27 Mo. 55.

While instructions are to be considered · in their entirety and as a whole; yet each instruction must be correct in itself so far as it goes, and where it attempts to cover the entire case and contains such a vice as we have pointed out, it cannot be cured by other correct instructions given in the cause. Under the di- rection of this instruction the jury could, and may have proceeded to make the verdict, without regard to the other instructions or the facts submitted therein, and this is, we think, under our previous decisions, prejudi- cial error. *Thomas v. Babb*, 45 Mo. 384; *Goetz v. Rail- road*, 50 Mo. 472; *Singer Co. v. Hudson*, 4 Mo. App. 145; *Henry v. Bassett*, 75 Mo. 89; *Bank v. Murdock*, 62 Mo. 70, 73, and cases cited.

For these reasons the judgment of the trial court is reversed and the cause remanded. All concur, except Norton and Black, JJ., who dissent.

### On re-hearing.

RAY, J.—This case, on a motion for re-hearing, has been argued the second time, and we are earnestly asked to recede from the ruling heretofore made; and in sup- port thereof numerous authorities have been cited and urgently pressed upon our attention, as establishing a doctrine directly the reverse of the one announced in the opinion heretofore delivered. It is not pretended that the ruling already made is not supported by the au- thorities cited and relied upon in that opinion; but it is

insisted, that it is in direct conflict with other controlling decisions of this court, to which our attention was not called through inadvertence of counsel, and which it is claimed assert the correct doctrine upon the question involved. These decisions are cited in the brief of counsel. It may be conceded in the outset, that some few of them do assert a contrary doctrine, of which the cases of *McKeon v. Railway Co.*, 43 Mo. 405; *Karle v. Ry. Co.*, 55 Mo. 476 and *Whalen v. Ry. Co.*, 60 Mo. 327-8, are types; and it may also be conceded that many others (not altogether analogous to the case at bar) assert in general terms, that "when instructions are given, although taken separately each might be exceptionable; yet, if taken as a whole, they contain a correct exposition of the law of the case, the judgment will not be reversed." Of this class, the case of *Williams v. Vanmeter*, 8 Mo. 342; *Pond v. Wyman*, 15 Mo. 175, and others, are types. While the want of uniformity as well as actual conflict, apparent in our decisions, on this point, is greatly to be regretted, the question still recurs which class of rulings is best supported by principle and authority and will best subserve the ends of justice, that adopted in the original opinion herein; or that to which we are asked to conform our ruling by the counsel for plaintiff. In the class of cases relied on by plaintiff, where it is held "that the error or defect of one instruction may be cured or supplied by another," it will be seen, upon inspection, that the statement is qualified by the proviso, that the two instructions must not be inconsistent or misleading. 6 Mo. 323, and 50 Mo. 482, *supra*. It will also be seen that the doctrine has more frequently been applied to a class of cases, where the errors condoned were less glaring and dangerous than the one condemned in the case at bar.

The general doctrine on this subject is well stated in the case of *Thomas v. Babb*, 45 Mo. 384, where it is,

in effect, held that "an instruction which hypothecates a state of facts and upon their existence directs a verdict, is improper unless all the facts are hypothecated which are necessary to sustain a verdict." Also, "that each instruction as far as it goes, should be correct in itself; all must be consistent with each other and the whole taken together must present but one doctrine." That the instruction in question is vicious and objectionable and ought never to have been given, is conceded. But the controversy is as to the degree of this vice, on the one hand claimed to be curable, and on the other said to be wholly indefensible and incurable. The first instruction submits the facts relied on by plaintiff and if the jury believe them proved, then they have been authorized by the court to find the verdict in his favor. And the authority to find such verdict in that event, is tantamount to a direction to do so. In effect, if not in terms, the court declares that if the submitted facts are proved the law entitles the plaintiff to their verdict, and if this is so it is their duty to so find, and they can do so. Why should they consider or determine any other facts, otherwise submitted, in other instructions. They have the court's declaration that this is the whole case, which is thus put before them in one instruction. If other instructions require further findings of the facts they are manifestly two rules for the guidance of the jury, either of which they may follow, but their general verdict would not disclose which. All the instructions, it is true, are read to the jury, and they must suppose that they are all for their consideration and guidance, but this purpose may be defeated by a single defective instruction of this kind. It purports to cover the entire case, and authorizes a verdict; the whole series of instructions can do no more. Nor is the view we hold in this behalf any reflection upon the intelligence of the jury in their province as triers of the fact. The primary

idea in our law, in this behalf, is that the jury are presumed not to be learned in the law, and are to be instructed by the court as to the law, upon the various supposed states of facts submitted.

After a general verdict for the party, in whose behalf an error like this has been committed, there can be, we fear, no means of knowing that the jury have modified and corrected such an instruction, by disregarding its authority to make up their verdict thereon, which is, in effect, the claim of plaintiff, and besides, in so doing, they would be burdened with a duty which the law imposes on the court, and the whole theory of the law, upon which instructions are authorized or required, would be thereby reversed. The rule announced in many of the decisions that instructions should be considered in their combination and entirety, and that if correct in the whole as an exposition of the law of the case, the judgment should not be reversed, although a particular instruction may not be right or may be defective or erroneous, is in principle, we think, not applicable to the case at bar. Conceding the correctness and propriety of the rule, it is inapplicable when the particular instruction, though objectionable, directs no finding and, when, under the modification of the other instructions, which as a whole are correct it may be justly presumed to be harmless and without prejudice; but on principle cannot, we think, be fairly applied, when, as in this case, the instruction is based exclusively on the evidence offered by and favorable to one party, and ignores that of the other and directs a conclusion to be drawn therefrom in favor of the one whose evidence is submitted, and against the other whose evidence is excluded. Such an instruction is not a particular instruction, applicable to some facts or part of the case, but a general one and as comprehensive as the series, because it purports to embrace all the facts

necessary to a finding and directs a verdict. It does not simply form a part of the series because it is entire and complete in itself. It is one whole charge and complete exposition of the law of the case, and contains no reference to any other instruction, or to the plea of the defendant, or the evidence in support of it. Where such is the character and extent of authority in any one instruction, the series of instructions taken all together cannot be regarded as consistent and harmonious and as presenting one doctrine.

And further the supposed harmlessness of the first instruction is based, we think, on an assumption that as the jury must be supposed to have given proper consideration to the instructions taken as a whole, they have in so doing modified and disregarded the authority of said first instruction to make a finding, although they may have believed that the facts submitted to them therein had been fully proved. But where there is a general verdict there is, as we have before stated, no means of knowing whether this is so or not, as the verdict is in conformity with and not against the law as declared in the first instruction, which purports to submit all the material facts and authorizes a verdict and finding thereon.

In addition to cases cited in the original opinion, we add the following from our own adjudications, that of *Jones v. Talbot*, 4 Mo. 279, where it is held that, "Where erroneous instructions are given for one party, the error is not cured by giving for the other party instructions, explanatory or contradictory to those first given. The erroneous instructions should be expressly withdrawn from the jury." In the case of *Hickman v. Griffin*, 6 Mo. 37, the court say that, "Where the circuit court gives erroneous instructions, the error is not cured by the fact that correct instructions accompanied them, as such erroneous instructions may mislead the jury." See also *Clay v. Railroad*, 17 Mo. App. 629, and *State*

*v. McNally*, 87 Mo. 644. We also append the following cases from the Illinois court in support of our own ruling, viz: *Ry. Co. v. Harwood*, 80 Ill. 91, where the court say, "The instruction asserted a right of recovery, under the circumstances named in it, without containing the requirement of any care or caution on the part of the deceased. In this, the instruction is manifestly wrong. And although other instructions given did contain such requirement, that did not cure the error. It left the jury at liberty to select and act upon either instruction, as might strike them as being most proper." In the case of *Ry. Co. v. Dimick, Adm'r*, 96 Ill. 47, the court uses this language: "An instruction almost identical with the above was condemned in *Ry. Co. v. Harwood*, 80 Ill. 83. It may be said that the defendant's instruction gave the law on this subject accurately to the jury, but that is not enough. Where a case is close in its facts, the instructions should state all the law accurately. The jury, not being judges of law, are as likely to follow a bad instruction as a good one." In the case of *North Chicago Rolling Mills Co. v. Morrisy, Adm'r*, 18 A. & E. Ry. Cases, 48, this language is used by the Illinois court: "The question of contributory negligence was raised and was a very important one in the case. This instruction entirely ignores the question of contributory negligence. It purports to be complete in its statement of what will authorize a recovery, and omits the requirement of any care or caution on the part of the deceased. In this respect the instruction is erroneous, as we have heretofore repeatedly held," citing the above cases. We have cited and quoted from the above cases, because of their similarity to the one at bar and because they are in exact harmony with the ruling in this case, as well as many others of this court, cited in this and the original opinion herein. We might multiply citations and quotations from other courts to the same effect, but it is deemed unnecessary. After a care-

ful reconsideration of this question and an examination of the authorities cited, we feel constrained to adhere to the ruling heretofore made in the original opinion, both as being the better practice, sounder in principle and better supported by authority.

We may add that as upon a re-trial of the case the facts may or may not be the same, as important and material modifications therein may occur, we deem it not advisable to now pass on and decide other questions which have been argued before us, the decision of which would not change the result. But the question, who are fellow servants has recently been before this court and our latest adjudications in that behalf have been announced since the trial and submission of this case and reference to them may now be made, for the direction of the trial court and parties so far as the principle and rule declared may be applicable to the facts of this case, upon a re-trial thereof. See *Moore v. Railroad*, 85 Mo. 588; *McDermott v. Railroad*, 87 Mo. 235, and *Covey v. Railroad*, 86 Mo. 635.

For these reasons the judgment of the trial court, as heretofore ruled, is reversed and the cause remanded. In this opinion Judges Henry and Sherwood concur, and Norton and Black, JJ., dissent.

BLACK, J., DISSENTING.—I dissent from the majority opinion in this cause, because I regard it opposed to a long line of decisions in this state, which have been collected by the industry of counsel, and will be found in their briefs. To my mind the ruling is extremely technical, and I entertain the belief it cannot and ought not to stand the test of time. No objection is made to the entire series of instructions given at the request of the plaintiff, except the first, and to that only because it fails to make mention of the defence of contributory negligence. On this instruction the majority opinion says: "Why should they (the jurors) consider or de-

termine any other facts, otherwise submitted in other instructions? They have the court's declarations that this is the whole case which is thus put before them in one instruction.'' Can it be said the whole case is put before the jurors in the one instruction? Turn now to the instructions, and of those given at the request of the plaintiff, the second relates to such facts as will make Prather a vice-principal. The third in plain terms tells the jury, that if the plaintiff was aware of the defect in the scaffolding, and if the defect was such that a man of common prudence would not have gone upon the same, then he cannot recover; but if he did not know of the dangerous defect and the foreman did, and stated that the tie beam was not unsafe, and plaintiff relied upon that statement, then he was not guilty of contributory negligence, which would preclude a recovery. For the defendant, the court, in substance and legal effect, told the jury that it devolved upon the plaintiff to prove that his injuries resulted solely from negligence of the defendant, and that he must further show by a preponderance of the evidence that he did not know the scaffold was unsafe, ''and unless he has established each of these facts by a preponderance of the evidence, the verdict must be for the defendant.'' Again, if the accident happened in consequence of the combined negligence of Prather, in not strengthening the tie beam, and of plaintiff in stepping upon the same, ''then the jury must find for the defendant.'' Many other instructions were also given, all to the effect that plaintiff could not recover, and the verdict should be for the defendant if plaintiff was wanting in care.

Now, I repeat, how can it be said the whole case was put before the jurors in the first instruction, when the third concedes in plain terms that certain other facts, if true as alleged, would defeat a recovery? The plaintiff, according to the practice in this state, after the evidence was all in, and before the facts were argued be-

fore the jury, asked, had given, and read to the jury these instructions, by the third of which, he, in unequivocal language, concedes he cannot recover if guilty of contributory negligence. Is this admission, and are all of these instructions, given at the request of the defendant, to go for naught? Must an admission, once so fully made, be repeated in every instruction, for fear it may escape the attention of the triers of fact? Day after day judgments are affirmed over instructions which, if they stood alone, would be held to be erroneous ; yet, we take the whole series in their combination and say they fairly present the law. This is not a rule to be applied when the cause is to be affirmed and disregarded on all other occasions. It is,true the jury must take the law from the court, but the court does not instruct them by way of giving abstract propositions. As was done in this case, they are told what their verdict must be on a given state of facts, and what it must be on other or additional facts. Instructions of this character are quite as well understood by the jurors as by court and counsel. No advocate, it is believed, would say of these instructions that plaintiff could recover regardless of the question of care on his part. The court, openly, and the jurors in their minds, would have made haste to refute any such assertion. That no such claim was made in this case, until the cause reached this court, is clear enough.

I am unable to see the conflict in the opinions of this court, which is lamented in the majority opinion. Some confusion may arise by taking extracts here and there, detached from the subject matter, and entire features of the case under consideration, just as does in considering one instruction independently of the others. The rule is well enough stated in *Thomas v. Babb*, 45 Mo. 384 ; but it will be seen the instruction was not condemned because it failed to state all the issues, but because it did not recite facts sufficient to make a defence. Norton, J., concurs.