ANNIE WINGFIELD, Administratrix of Estate of ROBERT WINGFIELD, v. WABASH RAILROAD COMPANY, Appellant.

**In Banc, April 2, 1914.**

1. INSTRUCTION: None Asked on Cause of Action. The submission of a personal injury case to the jury without any instruction asked or given on the question of defendant's negligence, or plaintiff's contributory negligence, or his assumption of the risk, and none whatever except one on the measure of damages and another on the validity of a release of defendant from further liability, is a practice to be condemned, but is not reversible error.

2. ———: Release: Covering Whole Case. An instruction which directs the jury that if they find certain facts, they will not consider as a defense a release of his cause of action signed by plaintiff, and winding up with the words "except to the extent of crediting the amount of $690 on your verdict, if your verdict should be for plaintiff," does not purport to direct a verdict for plaintiff upon the whole case, and cannot be considered as error in that it omits the defenses to the cause of action pleaded by defendant.

   *Held*, by WOODSON, J., dissenting, with whom WALKER, J., concurs, that instructions given for the plaintiff which fully cover his own case need not include the affirmative defenses pleaded by defendant.

3. ———: Fraudulent Representation: Must Be of Fact: Instruction. In a suit against a railroad company for breaking the plaintiff's arm, if the company's physician stated to him that the bones of his arm had united, and plaintiff in reliance thereon entered into an accord and satisfaction of his cause of action, and said statement was not true, plaintiff should not be bound by the release, because the statement was not one of opinion, but one of fact. But an instruction which does not present that issue of fact to the jury, but tells them that if they "find that such doctor assured the plaintiff in substance and without qualification that plaintiff's arm would be as good and strong as ever within six months," etc., thereby placing plaintiff's right to have the release revoked on the physician's opinion, is reversible error, the verdict being for plaintiff, although there was positive testimony that the physician stated the bones of the arm had united.

Held, by GRAVES, J., with whom a majority concur, that a physician, skilled in determining existing bodily conditions, should be held to be making statements of facts, rather than giving a mere opinion, when he undertakes to give a present existing condition of the patient.

*Held*, by WOODSON, J., dissenting, that a statement made by a physician, made after an external examination of plaintiff's arm, in response to plaintiff's request to know its condition, that there was a perfect union of its bones, was not a statement of a fact, but of a mere opinion, and that every statement of a physician as to the actual condition of a patient is but an expression of an opinion.

4. NEGLIGENCE: Imminent Peril: Railroad Water Tank. The evidence discloses that plaintiff was employed in building a railroad water tank designed to hold sixteen feet of water; that it was partly braced at the time it collapsed; that the braces were nailed, but not bolted, as they should have been, according to the usual and proper methods of construction; that the tank was being filled with water during the forenoon; that the water was leaking and making the ground at the tank's base wet and inclined to slide or slip; that just before noon the tank was quivering and rocking to the extent of two inches or more; that plaintiff knew all these things; that at the dinner hour the workmen discussed the dangerous condition, but whether in plaintiff's hearing is not clear; that knowing these facts, the plaintiff, with other workmen, obeyed the directions of their foreman and went back to work upon the tank, the plaintiff being near the top thereof; and that shortly after their return the tank fell, and plaintiff was injured. *Held*, that these facts do not show such imminent peril as to justify the court in declaring as a matter of law that the act of plaintiff in returning to the work would preclude a recovery.

Appeal from Jackson Circuit Court.—*Hon. James H. Slover*, Judge.

REVERSED AND REMANDED.

*Sebree, Conrad & Wendorff* and *J. L. Minnis* for appellant.

(1)   The court committed error in refusing the demurrer to the evidence and the defendant's instruction in the nature of a demurrer offered at the close of

all the evidence, because the evidence fails to prove facts sufficient to constitute a cause of action. 1 LaBatt on Master and Servant, secs. 29, 267; Holloran v. Iron & Foundry Co., 133 Mo. 470. (2) The plaintiff failed to prove fraud in the execution of the release; and for this reason the court erred in refusing the demurrer to the evidence, and the instruction in the nature of such demurrer offered by the defendant at the close of all the evidence. Brown v. Mining Co., 194 Mo. 681; 1 Bigelow on Fraud, p. 473; McFarland v. Railroad, 125 Mo. 253; Morris v. McMahan, 75 Mo. App. 494; Cooley on Torts, 474; Wade v. Ringo, 122 Mo. 322; Homuth v. Railroad, 129 Mo. 629; Carroll v. United Railways, 157 Mo. App. 247; Mateer v. Railroad, 105 Mo. 320; 14 Am. & Eng. Ency. Law, 22; Wilder v. Decou, 18 Minn. 470; Development Co. v. Silva, 125 U. S. 247; Railroad v. Bennett, 63 Kan. 781. (3) The verdict is excessive. Murphy v. Railroad, 115 Mo. 111; Phippin v. Railroad, 196 Mo. 321; Clifton v. Railroad, 232 Mo. 708. (4) Instruction numbered 1, given on the part of the plaintiff, is erroneous. (5) The plaintiff failed to prove any fraud in the execution of the release, and the demurrer to the evidence should have been sustained for that reason.

*Boyle, Guthrie, Howell & Smith* and *Guthrie, Gamble & Street* for respondent.

(1) The defendant was guilty of indefensible negligence. The facts show gross negligence. No evidence shows that Wingfield knew of any danger. He says he did not. Even if the evidence had disclosed any knowledge on his part of the conditions producing danger, yet he was wholly inexperienced in this line of work and had a right to rely on the superior judgment of the master. The issue was settled by the jury. Jewel v. Bolt & Nut Co., 231 Mo. 176; Butz v. Construction Co., 199 Mo. 279; Clifford v. Transit Co.,

202 Mo. 432; Shepard v. Transit Co., 189 Mo. 362; Jarrell v. Coal Co., 154 Mo. App. 561; Corby v. Tel. Co., 58 Mo. App. 27; Morgan v. Railroad, 136 Mo. App. 337; Shortel v. City, 104 Mo. 114; Burkhart v. Rope Co., 217 Mo. 466. (2) The release was obtained by wilful and intentional fraud, under circumstances of inequality of the parties and was unconscionable. Lomax v. Railroad, 119 Mo. App. 198; Althoff v. Transit Co., 204 Mo. 171; State ex rel. v. Stuart, 111 Mo. App. 493; Pomeroy's Equity Jurisprudence (4 Ed.), secs. 847, 928, 947, 948; Funding Co. v. Heskett, 125 Mo. App. 532; Hess v. Draffen, 99 Mo. App. 580; Brownlee v. Hewitt, 1 Mo. App. 360; Barnard v. Duncan, 38 Mo. 170; Derby v. Donohue, 208 Mo. 706; Lappin v. Crawford, 186 Mo. 462; Eaton v. Winnie, 20 Mich. 165; Connor v. Chemical Co., 17 Atl. 975. (3) And not binding under cases concretely applying to this very class of controversies. Carroll v. Railroad, 157 Mo. App. 277; Patterson v. Railroad, 55 Wash. 625; Bjorklund v. Elec. Co., 35 Wash. 439; Hedin v. Institute, 62 Minn. 148; Nelson v. Railroad, 111 Minn. 193; Railroad v. Hambright, 87 Ark. 614; Railroad v. Richards, 23 Okla. 256; Jones v. Railroad, 32 Tex. Civ. App. 198; Vialett v. Ry. & Power Co., 30 Utah, 260; Railroad v. Goodholm, 61 Kan. 758; Lumley v. Railroad, 76 Fed. 70; Jones v. Accident Assn., 119 N. Y. Supp. 589; Dominicis v. Casualty Co., 116 N. Y. Supp. 975.

GRAVES, J.—The facts of this case were well stated by BOND, J., then Commissioner, when this case was pending in Division No. One. To that statement, we shall add but one thing, i. e. the full text of plaintiff's reply, which we think important in the discussion of a question raised. The statement of BOND, J., is as follows:

"Plaintiff sues for injuries sustained by him on June 29, 1906, while working for the defendant upon

a water tank at or near Keytesville, Missouri, which
he alleges, through the negligence of defendant, col-
lapsed, gave way and fell, causing him severe and per-
manent injuries.   The answer was a general denial,
plea of contributory negligence, assumption of risk and
of release and satisfaction for the sum of $650 paid
to plaintiff by defendant.   The reply contained a de-
nial of matters not therein admitted, and an averment
that the instrument of writing executed by plaintiff
on the 24th of December, 1906, purporting to release
and satisfy all his claims against the defendant for
the injuries sustained, was induced by fraud and wrong-
ful conduct on the part of the defendant, in that the
defendant procured the plaintiff to rely upon the state-
ment of a physician selected by it to examine his in-
juries; that said physician made an untruthful state-
ment to plaintiff as to the extent of his injuries, upon
which plaintiff relied solely in accepting such com-
promise and executing said release; that plaintiff,
prior to the commencement of this suit, tendered to
defendant a return of the $650, which was refused, and
hereby continues his tender thereof.

"For plaintiff there was evidence tending to show
that he was a member of a gang of twelve or thirteen
men working under the direction of a foreman, A. C.
Blake, known as the bridge gang, and employed by
defendant in putting up water tanks; and in the pros-
ecution of this work they had been for about a week
engaged in the construction of a temporary tank on
the banks of the Chariton river, about twenty-eight
miles from Moberly, which was intended to furnish
water for a water train belonging to the defendant
and used for supplying water at Moberly, Missouri,
during the continuance of a prevailing drouth.   This
foreman described specifically the method of construct-
ing such tanks and the general dimensions of the one
then being built, and the particular duties of the men
employed by him in the construction work; the tank

in question was intended to hold sixteen feet of water; plaintiff was one of the workmen employed by him and assisted in the building of that tank; it was partly braced at the time it collapsed, which took place directly after they had eaten their dinner; these braces were nailed, but had not been bolted as they should have been, according to the usual and proper method of construction; that the plaintiff was acquainted with these facts and knew as much about the condition of the tank as he did. There was testimony that plaintiff was on top of the tank and engaged in pulling up dirt to stop a leak at the time of the injury; that it shook and rocked before falling, and this was commented upon by some of the workmen and deterred some of them from going upon it; that the plaintiff was a bridge carpenter. On his own behalf plaintiff testified that he was injured on the 29th day of June while engaged in his work on top of the tank about thirty-five or forty feet from the ground; that when it gave way he was unconscious for about a minute while the water was running over him; that he was caught after the fall between an iron band and a joist on top, three by eight inches; that the iron band was a tank hook a half inch thick and five inches wide; that one of the staves was also on him, which was four inches wide and three inches thick and sixteen feet long; that he found his arm broken and the bone exposed through the skin and his undershirt; that he was taken to Keytesville, about a mile and a half distant, where the doctor gave him a hypodermic injection, after which he was put in a caboose, and the conductor poured hot water on his arm until they got to Moberly, where he was taken to a hospital and then put in the operating room; that after coming out from that he found his arm was not treated with splints or casts but was kept lying on a pillow and remained in that condition a week or longer. After about two weeks they put a plaster cast upon it. The physician

who treated him was Dr. Clapp; that after removing the cast they put tin splints on it. Subsequently replaced them with wooden splints, in which condition it was kept until he was examined in St. Louis, September 21, 1906. A physician who examined plaintiff three or four weeks previous to the trial testified that he found his arm was broken and disunited; that the plaintiff showed him pieces of bone which had worked out; that the separated bones were held together by exudated matter. This physician gave his opinion that in order to remedy this the fracture must be opened, the ends of the bone would have to be cut off and wired together, for in their present condition they were overlapping  each  other, and that this operation would shorten the arm three or four inches.  He further stated  that assuming plaintiff's testimony as to the nature and history of his injury to be true, on the 21st of September, 1906, it would not have warranted a skilled professional man in then stating to the plaintiff that there was a reasonable certainty of a complete recovery of the injuries to his arm.  The testimony of this physician was corroborated by three others. There was further testimony for the plaintiff, that he was approached by a representative of defendant to make a settlement of his claim and was offered $200, which he refused, telling him that he did not know of the condition his arm was going to be in; that he was then asked if he would go to St. Louis, if transportation was furnished him, and see Dr. McCandless, which he agreed to do, and about a week thereafter he made a trip to St. Louis and met that claim agent who told him which street car to take in order to reach Dr. McCandless, whom the agent said was one of the best physicians in St. Louis and whatever he told him could be depended upon.  The plaintiff replied he knew nothing about the said doctor and would have to take the agent's word for that, but would go out and see

257 Mo. 23

him; that he found Dr. McCandless at his residence; that he was accompanied on his trip out there by Dr. Ragsdale, a student at the Moberly hospital, whom he had asked to have accompany him, as he was weak and did not want to go around by himself; that Dr. Ragsdale said to Dr. McCandless, the plaintiff wants you to examine him; that Dr. McCandless proceeded to do this for thirty or thirty-five minutes; that plaintiff then stated to Dr. McCandless that he wanted to know how his arm was going to be, whether it was going to get well or not, that he had to work for a living and was contemplating a settlement, and would like to have him be honest in his opinion as to whether his arm was going to get well or not. He said the doctor replied, 'Young man, I will guarantee you will have a good arm inside of six months;' that the doctor further told him that there was a perfect union of his arm and advised him when he got back to the hospital to take his arm out of the sling and let it hang down, stating that its paralyzed condition was on account of the arm being drawn up, that 'after your arm hangs down at the side the circulation will be restored;' that he then asked Dr. McCandless whether he was positive the arm would get well, and the doctor replied, 'Inside of six months that arm will be perfectly well'; that the doctor agreed to telephone his diagnosis to Mr. Austin, the claim agent who had induced plaintiff to call upon him; that the plaintiff went back to see Mr. Austin, who told him that he had gotten a telephone from Dr. McCandless and that whatever Dr. McCandless told him he could depend upon. Thereupon they began to talk about the settlement and reached an agreement as to the amount, and plaintiff signed a release in the superintendent's office after he got back to Moberly, because he believed Dr. McCandless had told him the truth. Plaintiff at the time of the trial testified he had hardly any use of his arm. He could not put his hand on anything and push up; that there

was a little life in his little finger and that the rest of his fingers are dead and the thumb is stiff; that he can lift his hand up and down but cannot put his arm on anything with any weight and push down on it; that in one direction he can raise his arm from his body. The visit of the plaintiff to Dr. McCandless was about the 21st of September, 1906. The agreement of release and satisfaction was signed three days thereafter. That he remained in the hospital from the 26th of September until the 3rd of October, carrying his arm in a sling at that time. Plaintiff stated further, that he had been knocked down in three fights since the injury, but did not fall upon his injured arm, that he was now keeping a boarding house and drank more than formerly, in order to deaden the pain in his arm.

"The defendant introduced its assistant claim agent, Mr. Austin, who testified that in August, 1906, he discussed the settlement with plaintiff and made him an offer of $200, which the plaintiff declined to consider, saying that he preferred to wait awhile and see how his arm would progress; that later he furnished plaintiff transportation to St. Louis; plaintiff met him there and talked over the matter of settlement and wanted $1000 or $1200. The witness suggested that plaintiff go to see Dr. McCandless; that McCandless made a written or telephone report to him of his examination and later he and the plaintiff took up the matter of settlement, and, after concessions, reached an agreement of $650. The defendant then introduced the doctor who gave plaintiff the first treatment after his injury and also at the hospital, who stated from the examination he made of the plaintiff's arm, about the early part of September, 1906, by feeling over the seat of the fracture, he thought that a good result had been obtained and that there would be a useful arm. Dr. McCandless testified that he was called upon on the 21st day of September, 1906, by plaintiff in company with a physician from Moberly; that the splints

were taken from plaintiff's arm, and he examined it and found that the upper bone of the arm had been broken and that there was callous at the seat of the fracture, and it seemed to him there was a satisfactory union. He made a verbal report of his examination to Mr. Austin that he thought the results promised good from the observations which he made. He stated further that in all cases where there was much involvement he would reserve his opinion until the splints were removed and the arm put in use; that his opinion was that plaintiff would have a 'useful arm,' and that he said to the young doctor who accompanied him, 'Doctor, I think this will give good results;' that this remark was made in the presence of the plaintiff, but he did not tell plaintiff his arm would entirely recover or be as good as ever nor that he would guarantee it to be well within six months; that no medical man ought to make such statements because they would 'be irregular, unusual and unknowable.' His testimony was corroborated by that of Dr. Ragsdale, who accompanied the plaintiff to his office.

"The jury returned a verdict for $12,690, from which defendant appealed, and assigns for error the refusal of the court to sustain its demurrer to the evidence, the insufficiency of the proof of fraud in the execution of the release, the giving of instruction numbered one on the part of the plaintiff, the overruling of the objections to the hypothetical questions put to the witness, and that the verdict is excessive.

"Since the case has been pending here the plaintiff died, and it is now revived in the name of his administratrix."

The full text of the plaintiff's reply is as follows:

"For reply to the answer of the defendant plaintiff says:

"1. That he denies the truth of each and every averment, allegation and statement in said answer contained not hereinafter expressly admitted.

"2.   On or about the 24th day of September, 1906, plaintiff, in consideration of the sum of six hundred and fifty dollars paid to him by the defendant, executed a document purporting to be an agreement, in writing, between plaintiff and defendant by which plaintiff purported to settle, adjust, compromise and satisfy the claim herein sued on, for the sum of six hundred and fifty dollars; but plaintiff· avers that he was induced to execute such document by the fraudulent and wrongful conduct of the defendant in this, that the defendant procured the plaintiff to rely, as he did rely, upon the statement of a physician selected by the defendant to examine the injuries of the plaintiff, that from such examination he could and did know and assured the plaintiff *that the bone of the plaintiff's left arm where broken was perfectly reuniting* and that as far as such injury to the plaintiff's left arm was concerned said left arm would be as good and strong as ever within a period of time not exceeding six months from the 21st day of September, 1906. That defendant assured plaintiff that such statement of such physician could be fully relied upon; that plaintiff did fully and wholly rely upon such statement in accepting said sum of six hundred and fifty dollars and executing such document, and would not have executed the same except for such statement and plaintiff's reliance thereon; that although unknown to the plaintiff at the time the condition of plaintiff's arm was such as not to justify even an operation of a skilled professional man much less an unqualified statement as aforesaid, and the said physician employed and relied upon by the defendant was not justified in good faith in making such statement, and same was not true, or of the defendant in adopting and repeating the same; prior to the commencement of this suit plaintiff duly tendered to the defendant a return of the sum of six hundred and fifty dollars, which was refused by the defendant, and which plaintiff is ready and will-

ing to pay into court for the use of defendant, or to be credited upon such judgment as may be rendered herein in favor of the plaintiff.

"Wherefore plaintiff prays that defendant take nothing by this action, and that plaintiff recover judgment as prayed for in his petition."

The italics are ours.

This sufficiently outlines the case.

I. This is another one of those cases where counsel for plaintiff seem to have trod with fear and trembling, lest they get reversible error in the record. To begin with they chose to plead negligence generally, rather than specifically, but of this we see no room for complaint or criticism. They no doubt proceeded upon the idea that the doctrine *res ipsa loquitur* applied, in this kind of case, and counsel for defendant let it go at that. The matter is of interest in connection with the further progress of the case. The only allegation of negligence is:

Release: Instruction: Covering Whole Case.

"Plaintiff further says that heretofore, and on, to-wit, June 29, 1906, he was in the employ of the defendant, working upon a water tank, at or near the city of Keytesville, Missouri, when, through the negligence of the defendant, said water tank collapsed, gave way or fell, thereby causing great and serious injury to the plaintiff as follows."

When the plaintiff came to asking instructions, he requested but two (1) an instruction on the measure of damages and (2) one upon the validity of the release, which being of importance, we quote as follows:

"If you find and believe from the evidence that prior to the execution of the papers of release and settlement between the plaintiff and defendant for the injuries complained of, as introduced in evidence by the defendant, the defendant caused the plaintiff to be examined by a doctor selected

by it, and assured the plaintiff that such doctor was competent and reliable and that said doctor could be fully relied upon; and if you further find that such doctor assured the plaintiff in · substance and without qualification that plaintiff's left arm would be as good and strong as ever within a period of time not exceeding six months; and if you further find that the conditions existing at the time of such examination were such that such doctor was not, if a competent doctor, justified as a reasonably prudent doctor in giving in good faith such assurance (if given) and such doctor did not believe that such statement (if made) was true; and if you further find that such assurance (if given) was not a true statement and that plaintiff's left arm did not become as strong as ever in not exceeding six months from the time of such examination; and if you further find that a reasonably prudent person situated as you find the plaintiff was situated at the time of such examination˙was reasonably justified in relying upon such assurance (if any) as you may find was given by such examining doctor; and if you further find that the plaintiff in executing such papers of release and settlement relied upon such assurance of such doctor (if given) and would not have executed such papers except therefor, then in arriving at your verdict you need not take into consideration the execution of such papers of release and settlement except to the extent of crediting the amount of six hundred and ninety dollars on your verdict, if your verdict should be for the plaintiff.''

The defendant stood upon a demurrer to the evidence, and the court of its own motion gave the usual formal instruction about nine jurors being sufficient to render a verdict.

No where does the plaintiff by a requested instruction outline his theory of the case, and the trial court let them proceed (and rightfully so) without any clearly defined statement of the law upon the applicable

facts as to defendant's primary liability. We say the the trial court did so rightfully, because such courts are not bound to write instructions in civil cases. [Powell v. Railroad, 255 Mo. 420.] If counsel (fearing error in requested instructions) choose to submit their case without declaration of law upon the facts proven, they have the right so to do, but sometimes they may even face trouble in this direction. [Eversole v. Railroad, 249 Mo. l. c. 529; Powell v. Railroad, supra.] This case went to the jury without instruction outlining what facts or circumstances in evidence would constitute negligence upon the part of the defendant, or contributory negligence, or assumption of risk upon the part of plaintiff, all of which were pleaded. These matters would not be of such moment had no instructions been asked, but counsel for plaintiff did ask two, as above stated, one of which is seriously questioned here. That one we have set out above. It is always the better practice for counsel to have some definite theory of their client's right to recover, and put that theory in concise legal form in the nature of an instruction upon the facts proven. Reverting to this instruction. It was said in the opinion in Division, to which I then agreed: "But the instruction purported to cover the entire case and direct a finding. It should, therefore, have embraced the converse of that issue raised by the evidence for defendant, i. e. whether or not the disunited condition of the plaintiff's arm at the date of the trial, resulted from his mishaps or fights after the time of his examination by the surgeon." We held the instruction bad for that reason. In other words, we attempted to announce the wholesome doctrine that where the plaintiff's instruction clearly deals with the whole case, and directs a verdict for the plaintiff upon a given state of facts, such an instruction can not exclude the theory of the defense, and be held a good instruction, unless the theory of the defense as evinced by the evidence, is

outlined in other instructions, which when taken with that of the plaintiff, can be said to properly give the whole law of the case. Our brother LAMM, in an opinion, discarded, because we concluded that we had no jurisdiction of the case, has so clearly written the law upon this phase of the matter, that I shall not let the fragrance of his flower be lost, but shall preserve it here. He said:

"It is argued by plaintiff's learned counsel that, taken as a whole body of law, the instructions when read together were well enough, and that this view of it sustains instruction number one. We will recur to this doctrine when we come to consider instruction number two for plaintiffs. In dealing with the subject-matter of instruction number one it is sufficient to say that no instruction on either side cures the grievous error of its mandatory form. Nor did defendants follow the error in their instructions and thereby cure it. That instruction on its face deals with the whole case and, as it ordered a verdict for plaintiff if the jury found the facts therein hypothesized, a pretermission of an essential element in recovery, to-wit, a balancing of special benefits and special damages, was a fatal vice and one not cured by any other in the series given.

"In an early case in an opinion written by a jurist, Judge SCOTT, whose just fame is not only an ornament to jurisprudence but is fondly preserved as a sacred tradition of the Missouri bar, it was ruled, Clark v. Hammerle, 27 Mo. l. c. 70-71:

" 'In the trial of causes neither party is bound to ask instructions. If they are not asked, the giving them or not is at the discretion of the court. If instructions are asked on the whole case or of any particular matter arising out of it, which the court refuses, it is not bound afterwards to give instructions of its own as substitutes for those refused. If erroneous instructions are asked and refused, it is entirely at the

option of the judge whether he will afterwards give any or not. A party therefore who asks an instruction on the whole case must not frame it so as to exclude from the consideration of the jury the points raised by the evidence of his adversary. If a suit is on a bond for the payment of money, and the defendant gives evidence tending to show that he has paid it, it would not be proper for the court, at the instance of plaintiff, to instruct the jury that if they believed that the defendant executed the bond, they will find for the plaintiff. Such instruction would be erroneous, as it would exclude from the jury all consideration of the question of payment. It is no answer to this to say that the defendant might have asked instructions. He was not bound to do so, and it was at the peril of the plaintiff to ask instructions disposing of the whole case which excluded from the jury the consideration of the evidence of the defendant's tending to show that he had no right to recover.'

"The doctrine of that case has been affirmed over and over again. Cases may be found that seemingly announce a contrary doctrine; but on suitable analysis and when the facts of the particular case are considered with discrimination it will be found that the doctrine of Clark v. Hammerle is brought down as live and good doctrine to this very day. It runs, however, hand in glove with another so qualifying it as to make it a useable rule in working out the practical administration of justice in concrete cases, viz., that the mere pretermission in plaintiff's instructions of an element in defendants' case (a part and parcel of the defense interposed) may not work reversible error if that very element is plainly and effectually put to the jury in other instructions on either side in such form as not to cause confusing contradiction between instructions, but rather to make more specific, in, say, defendants' instructions, a matter that was dealt with in general form in plaintiff's.

"The student in case law so curious in that behalf as to seek to trace not only the evolution of that doctrine but its application in concrete cases may consult with profit Mead v. Brotherton, 30 Mo. 201; Sawyer v. Railroad, 37 Mo. 1. c. 263; Fitzgerald v. Hayward, 50 Mo. 1. c. 523; Owens v. Railroad, 95 Mo. 1. c. 181. The Owens case overruled Sullivan v. Railroad, 88 Mo. 169, on the point, and made the dissenting opinion of BLACK, J., in the Sullivan case a controlling pronunciation of the law. But it will be observed that neither in the principal opinion in the Owens case nor in the dissenting opinion in the Sullivan case was the doctrine of the Clark-Hammerle case exploded. To the contrary, it was left to stand and run with the qualification that if the whole body of law delivered to the jury put the case in correct form, then all essentials to recovery, or to the defense, need not appear in one instruction. [Gordon v. Burris, 153 Mo. 1. c. 232; Gibler v. Railroad Assn., 203 Mo. 1. c. 222 and cases cited; Tinkle v. Railroad, 212 Mo. 471; Wojtylak v. Coal Co., 188 Mo. 1. c. 283, post and ante; Flaherty v. Transit Co., 207 Mo. 1. c. 334; Orcutt v. Bldg. Co., 214 Mo. 1. c. 51; Austin v. Transit Co., 115 Mo. App. 1. c. 152; Toncrey v. Railroad, 129 Mo. App. 1. c. 600; Bolles v. Railroad, 134 Mo. App. 1. c. 704; Rudd v. Ins. Co., 120 Mo. App. 1. c. 16; Stewart v. Andes, 110 Mo. App. 1. c. 247; Stauffer v. Railroad, 243 Mo. 1. c. 332-3.] Other cases will be found cited in defendants' briefs.

"Plaintiffs' instruction number one does not prosper on the theory just discussed."

But is that doctrine applicable here? We have purposely set out this instruction. It does not purport to direct a verdict for the plaintiff upon the whole case. It only directs that if the jury find certain facts, then they will not consider the release as a defense, and winds up with the words "except to the extent of crediting the amount of six hundred and ninety dollars

on your verdict, *if your verdict should be for the plaintiff.*"

Note the language italicized above.   This language does not direct a verdict for plaintiff.   Nor does this instruction taken as a whole undertake.to detail a state of facts, and then tell the jury that if they find such facts they should find for the plaintiff.   The most that can be said of the instruction in this regard is, that it outlines a state of facts, and then tells the jury if they find such facts, they will disregard the release in arriving at their verdict, except as to the credit mentioned.   The question of liability or no liability for negligence is not mentioned.   The matter of contributory negligence or assumption of risk is not mentioned.   As to the law upon the facts shown as to all these matters the jury were left to grope in the dark—a practice to be condemned, but we have not been reversing for such practice.   We do not believe that the instruction falls within the class of one attempting to cover the whole case, and directing a verdict upon hypothecated facts.   But the instruction is bad for reasons to be assigned in proper paragraph, when the case is a little more fully developed.

II.   It is urged that there was not sufficient evidence upon which to submit the question of the invalidity of the release to the jury.   This **Invalidity of Release: Statement of Opinion or Fact.** question was fully discussed by Bond, J., when the case was in Division.   His views were carefully worded, and met my approval then, and I have no reason to change at this time.   He draws the distinction between the statement of an existing fact, and the mere expression of an opinion as to what will take place in the future, as actionable fraud in matters of contract.   His language is:

"Leaving out of view the confliction of this evidence, since that has nothing to do with its submission

to the jury, the point to be decided is, whether plaintiff's version of it had any tendency to show that he was fraudulently induced to sign the release; and therefore entitled to have a jury pass on that issue. [R. S. 1909, sec. 1812; Berry v. Railroad, 223 Mo. 358.]

"In order to sustain a defense in an action at law attacking the validity of a contract on the ground that its execution was induced by fraud, it is necessary to prove (1) that the statements were false; (2) that they were known to be false when made, or (what is the same thing) that they were made as of his own knowledge by the utterer, when in fact he had neither any knowledge of the subject, nor any reasonable grounds to believe them to be true; (3) that the defendant had a right to, and did rely upon the truth of such misrepresentations when he executed the contract. [Hamlin v. Abell, 120 Mo. 188; Edwards v. Noel, 88 Mo. App. l. c. 439; Dulaney v. Rogers, 64 Mo. 201.] These are also the essential elements of an action for deceit or fraud. [20 Cyc. 12.] But whether used as grounds for suit or as a defense, the false averments must relate to matters of fact past or present and not matters of judgment, opinion, estimate, or future expectations. This is the settled rule where the parties are dealing at arms' length. [Brown v. Lead Co., 194 Mo. l. c. 700.] But when that is not the case, it is held in many states that justice requires some expansion of the rule, especially in the relations of professional or other men possessed of special learning, knowledge and skill, with other persons not having the same advantages. The reason given is that the superior qualification of the one is an invitation of trust and confidence to the other which the law will not permit to be fraudulently used to his loss and damage. A few illustrations may serve to illustrate the application of this principle in other jurisdictions. A case arose in Texas. Suit was for personal injuries, and the defense was release. A reply that the release

was fraudulently obtained. The evidence tended to show that the plaintiff executed it upon the representations of a doctor to the effect that the bones of plaintiff's arm had 'knitted and united together,' and that as soon as the swelling had passed his arm would be as good as ever. The Texas court added: 'The facts in evidence warrant the conclusion that Stewart [the doctor] made the representations and statements to the appellee for the purpose of inducing him to execute the release, . . . that the representations and statements so made by Stewart were false in that the bones at the time of the trial were not united and that his arm was practically destroyed in its usefulness.' The court added: 'We cannot agree with the contention of appellant, that it may escape liability on the ground that the representations and statements made by Stewart were a mere *expression of opinion*. It was more than opinion—it was the *statement of fact*. The effect of his statement was that the appellee was a sound man, that the bones of his arm had knitted together, and that it would be all right. It is true that this statement may have been predicated upon his opinion as a medical expert but the *opinion is based* upon facts of which he possessed knowledge.' (The italics are ours.) The court held that the cause was rightfully submitted to the jury. [Houston, etc. R. R. Co. v. Brown, 69 S. W. (Texas) 651. See also Pattison v. Railroad, 55 Wash. 625; Railroad v. Hambright, 87 Ark. 614; Railroad v. Richards, 23 Okla. 256; Hedin v. Minneapolis, etc. Institute, 62 Minn. 146, affirmed in Nelson v. Railroad, 111 Minn. 193; Viallet v. Railroad 30 Utah, l. c. 267; Lumley v. Wabash, 76 Fed. (C. C. A.) l. c. 70; Dominicis v. Casualty Co., 116 N. Y. Supp. (Sup. Ct. 1909) 975. See *arguendo* Carroll v. United Rys. Co., 157 Mo. App. l. c. 268.] In all of these cases it was held that the judgment of the physician as to the extent of the injuries at the time of his examination and his statement of the existing condition

of the patient is not in any sense the expression of an opinion but the assertion of a matter of fact, and that if untrue and fraudulently made, would afford a basis for setting aside a release made upon faith in its verity. Some of them hold that the opinion of the physician as to the future recovery of the party examined within a specified time becomes actionable from the fact of his presumed competency and knowledge and the trust reposed. And that if the plaintiff in sole reliance on that opinion makes a settlement for an unfair amount, it may be set aside upon a showing that the medical statement inducing the settlement was untrue in fact and fraudulently made because not bottomed on a knowledge which the physician by virtue of his profession should have had when he gave the opinion. This extension of the rule need not be now affirmed by us. For in the case at bar the plaintiff testified that the physician told him the bones of his arm were united at the time of the examination. Other testimony adduced on his behalf tended to show that was not the fact. This representation made by the physician was not the expression of an opinion but the assertion of an existing fact, and therefore clearly within the general rule making such assertions when fraudulently made a proper ground for annulling a release executed upon faith in them. The opinion of the doctor to that extent, at least, presented an issuable fact which the plaintiff was entitled to have the jury pass upon in the case at bar. The cases of McFarland v. Railroad, 125 Mo. 253, and Homuth v. Street Ry., 129 Mo. 629, do not in any way contravene this conclusion. In the first of these citations, the court calls attention to the fact that the release executed by the plaintiff actually described the full extent of her injuries. Under these circumstances the court held that she could not have been deceived in executing the release; and that having made it with full knowledge of its provisions and received payment in accordance with its terms, she

could not afterwards maintain an action for further injuries. In the second case the statement relied upon by the plaintiff as having induced the execution of the release was the representation to her, previous to the settlement, made by the physician for the defendant, that he thought she would be well in fourteen days, accompanied by the statement, 'here is your physician, ask him his opinion.' The court held, that there was nothing in the circumstances which warranted the presumption that a statement so made by the company's surgeon was not in the utmost good faith and contained an honest expression of his opinion, and hence did not constitute an actionable fraud. These were not representations of existing facts. It is apparent, therefore, that neither of those cases contravenes the rule applicable to the direct, unequivocal and positive statement (as testified by plaintiff) of the surgeon in the case at bar, that the separated bones of his arm had united at the time of the examination made. Our conclusion is, that the truth or falsity of that statement and the *scienter* of the maker and the reliance of the plaintiff upon it in executing the release offered in evidence, presented an issue which should have been submitted to the jury by proper instruction.''

It will be noticed that whilst our brother BOND says that some courts have extended the rule to opinions as to future recovery of the patient, he was careful not to give the assent of this court to that doctrine. In view of what we have previously held, we could not well assent to this new rule. [McFarland v. Mo. Pac. Ry. Co., 125 Mo. l. c. 278; Homuth v. Street Ry. Co., 129 Mo. 629.]

In so far as the doctor undertook to state existing facts, as he did, if he said the bones were then united, the truth or falsity of such statements are for consideration. A physician, skilled in determining existing bodily conditions, should be held to be making statements of fact, rather than giving a mere opinion,

when he undertakes to state a then existing condition of the patient. So in this case, if the company's physician stated to deceased that the bones of his arm had then united, and such stated fact was not true, and the deceased in executing the release believed such statement of fact, and acted thereon, then if the statement was false, plaintiff should not be bound by the release. But the trouble with plaintiff's instruction in this case is, that it does not present that question for the consideration of the jury. The instruction predicates the plaintiff's right to set aside the release upon the opinion as to the date of the future recovery of the deceased and not upon the ground that the doctor had stated that the bones were then united, when in truth and fact they were not. (We use the term deceased, because the original plaintiff is dead now, and the suit is proceeding in the name of his administratrix.) The wording of the instruction upon this question is "and you further find that such doctor assured the plaintiff in substance and without qualification that plaintiff's left arm would be as good and strong as ever within a period of time not exceeding six months," and that such statement was false, then the release should be set aside. The whole instruction is based upon the opinion expressed as to the future recovery of the plaintiff's arm, and not to any false statement of a then existing fact. Not only is this the situation of the instruction, but it is the theory of the reply, which we have set out fully to the end that its purport might be seen. It is true that in such reply the plaintiff avers that the doctor said "that the bone of the plaintiff's left arm where broken was perfectly re-uniting" but the instruction does not cover this idea. It should also be noted that the allegation is that the bone "was perfectly *uniting*" whilst the proof is that the doctor said that it had *"perfectly united."* This last is somewhat by the wayside. The point is that the instruction

257  Mo.  24

allowed an invalidation of the release for an alleged false opinion as to the time in which the arm would, in the future, become well, and not for a false statement of a then existing fact. So that grant it to be true that when the doctor told deceased that the bones of his arm had then united, and in so doing stated a fact, which if false would nullify the release, yet no such theory was presented to the jury, and that case has never been passed upon by the jury. The release could not be set aside for the mere expression of the opinion covered by the instruction. In the McFarland case, supra, the language used by the physician was "plaintiff would be up and around in ten days or two weeks;" of this we then said: "As to the last, it amounts to no more than an expression of opinion as to the probable duration of plaintiff's injuries." Upon the theory that the instruction predicates plaintiff's right to avoid the release upon the finding of a mere false or mistaken opinion, rather than upon a false statement of a then existing fact, the instruction was error for which the case will at least have to be reversed.

III. Defendant urges that its demurrer to the evidence should have been sustained, and therefore that the case should be reversed outright. This is pressed more upon the theory of the defendant's answer rather than upon the theory of absence of negligence upon the part of defendant. We are not advised by the petition what acts of negligence are chargeable to defendant, but there is evidence that the tank, so far as the base or foundation is concerned, was not constructed in the usual way, nor had it been bolted up in the usual way. In fact, there is evidence of a negligent construction of the tank, and further that there was negligence in filling the tank with water in its then unfinished condition. There may be other matters, but these suffice to show

that the plaintiff could draw an instruction upon the negligence of defendant.

We take it, however, that defendant's real contention is that the plaintiff's own conduct precludes him from recovery. There is nothing in the assumption of the risk as pleaded. The deceased did not assume the risk of the defendant's negligent acts. There is much evidence adduced by a cross-examination of the plaintiff's witnesses, which goes to the question of contributory negligence. The evidence, from this source, shows that the tank was being filled with water by a pump in the forenoon of the day of the accident; that the water was leaking and making the ground at the base of the tank wet and inclined to slide or slip; that just before noon the tank was quivering and waving to the extent of two inches or more; that deceased knew all these things: that at the dinner meal the dangerous condition of the tank was discussed, by the workmen, but it is not clear whether deceased heard this discussion: that knowing these facts the deceased, with other workmen, obeyed the directions of their foreman and went back to work upon the tank, the deceased being up near the top thereof; that shortly after their return to work the tank fell and injured deceased. This evidence might justify the presentation of these acts of the deceased to the jury upon a proper instruction, but the evidence does not show such imminent peril as to justify the court in declaring as a matter of law that the act of deceased in so going back to work upon the tank, would preclude a recovery by plaintiff. At most it was a question for the jury upon proper instructions. In this case, however, both sides seem averse to instructions. Upon the question of defendant's negligence we believe the plaintiff was entitled to go to the jury, and this contention of the defendant is not allowed. As the case must be reversed for the giving of instruction number 1 for the plaintiff, we need not discuss the excessiveness of verdict here urged. If

the plaintiff upon a retrial gets a verdict it may be more moderate next time.

Judgment reversed and cause remanded. *Lamm, C. J.,* concurs; *Bond, J.,* concurs for the reasons assigned in the quoted portion of his opinion; *Brown, J.,* concurs in result, and *Walker, J.,* concurs in result and in the opinion except paragraph one; *Woodson, J.,* concurs in result in separate opinion; *Faris, J.,* not sitting.

## DISSENTING OPINION

WOODSON, J.—When this case was in Division No. 1, I wrote a dissenting opinion upon two propositions; first, regarding the scope of the instructions; and second, regarding the opinion of the medical expert testimony. I acknowledge I was partially wrong upon the former, but adhere to my views expressed as to the latter.

In Division my learned associate, Judge Bond, who wrote the divisional opinion, correctly applied to this case the familiar rule of practice, that when the plaintiff, in submitting his case to the jury, omitted from the instructions one of the ingredient elements necessary for a recovery, and thereby induced the court to give the same, he should suffer the penalty of his error by having the judgment of the circuit court in his favor reversed and the cause remanded; but in doing so he stated the rule too broadly, as my learned associate Judge Graves has done in this case, in Banc, in this: that where the plaintiff undertakes to cover his entire case by instructions and omits therefrom the theory of the defense imposed, then he commits the same error that he would have done, and did actually commit, in this case, by omitting from his instructions a necessary element in his own case. My meaning is this: In this case after the plaintiff sustained the injuries complained of he entered into an accord and

satisfaction of his cause of action with the defendant. The defendant paid him a certain sum of money in consideration therefor and the plaintiff accepted the same, and in writing receipted for the same and acknowledged full and complete satisfaction for all damages he claimed he was entitled to on account of said injuries. In all such cases, prior to the enactment of section 1812, Revised Statutes 1909, the plaintiff could not sue and recover upon a cause of action so settled, because the law required him to go into a court of equity and have the accord and satisfaction set aside for some just ground; but after the passage of that statute, and in pursuance to its provisions, such a settlement may be attacked for fraud or other equitable grounds in the same action. But in each instance the burden of proof rests upon the plaintiff to establish the fraud, etc., before the law will permit him to recover damages for the injuries received.

In the case at bar, Judge Bond so held, and properly ruled, that the plaintiff's instructions were erroneous because they omitted the element of fraud mentioned, and there being no express aider in that regard in defendant's instructions, the judgment should be reversed and the cause remanded, and it was accordingly so done. I dissented upon the two grounds previously mentioned: first, because I erroneously assumed that the burden of proving the fraudulent release was upon the defendant and not upon the plaintiff, where it properly belonged; and I was, therefore, of the opinion in that case that it was not necessary for the plaintiff's instructions to submit the question of fraud to the jury, but that it should have been submitted by the defendant's instructions. That was where I erred. The fraud being a part of plaintiff's case and not of defendant's, it became the duty of the former and not that of the latter to instruct upon that issue.

Having thus disposed of my own error, and stating these preliminary matters, I will now pay my respects to the errors, as I conceive them, of my associates, Judge BOND in Division and Judge GRAVES in Banc, regarding this rule of evidence.

I maintain upon both principles and authority, that under our system of jurisprudence all that is required by the law of this State to entitle the plaintiff to recover in an action at law is: (1) to state in his petition the facts which are necessary to constitute his cause of action; (2) to prove those facts by a preponderance of the evidence introduced; (3) and to submit those facts, and those alone, to the jury, under fair and proper instructions. If under those conditions the jury should find for the plaintiff, I insist he is entitled to a recovery. I also maintain upon both principle and authority that before the defendant can defeat the plaintiff's right to a recovery in the case supposed, he must: (1) plead a legal defense to the cause of action stated in the petition: (2) if it is a general denial, to counteract the evidence of the prima-facie case made by plaintiff by competent evidence; (3) if an affirmation plea of new matter is filed then he must establish the truthfulness of the facts of the new matter by a preponderance of the evidence; and (4) in order to intelligently present the defense so made to the jury he should submit those facts to the jury by proper instructions.

In the former case, if the jury should find for the plaintiff, then in my opinion neither this nor any other court should interfere with the verdict of the jury or the judgment of the trial court; and in the latter case, should the jury find for the defendant, then this court should not disturb the verdict of the jury on the judgment of the circuit court.

By the foregoing observations I do not mean to contend that in civil cases the court, in the absence of requests by the plaintiff or defendant, is required to

give instructions to the jury, nor that either the plaintiff or defendant is legally required to ask them; but what I do mean to state is this: That if the plaintiff does see fit to ask instructions embracing all the elements of his own case as stated in his petition, and which there is evidence tending to prove, then his instructions need not go further and cover the defendant's theory of the case. In other words, the defendant cannot stand idly by and thereby impose upon the court or the plaintiff the duty of instructing the jury upon his theory of the case, when perhaps neither of them is perfectly familiar with it.

The law is, and the practice in this State has uniformly been, to give instructions for the plaintiff, which present only his case to the jury, and to give instructions for the defendant which present only his defense to the case made by the plaintiff.

The only ruling of this court, in my opinion, to the contrary where the point was made, that I have seen or have been able to find, is found in the case of Sullivan v. Railroad, 88 Mo. 169. There it was held, as the opinion here holds, that in an action for injuries resulting from the negligence of the defendant, and in which the issue of plaintiff's contributory negligence was made, an instruction was erroneous which hypothecates the facts as to defendant's negligence, and authorizes a verdict for plaintiff therein without in the same instruction limiting such right of recovery to the absence of such contributory negligence on the part of the plaintiff. (The word "hypothecates" is used because the court used it in that case.)

That opinion was by a divided court, BLACK and NORTON, JJ., dissenting.

The writer had the honor of presenting the same question again to this court in the case of Owens v. Railroad, 95 Mo. 169.

It was there insisted that the ruling in the Sullivan case was erroneous under the rules of pleading and

practice in force in this State, which do not require the plaintiff, as in some of the States, to charge in the petition or prove by the evidence, that he was free from contributory negligence, but imposes the duty upon the defendant to plead and prove contributory negligence. In other words, that the instructions for the plaintiff need be no broader that his petition and proof, and that if the defendant wished to rely upon contributory negligence or other facts as a defense, he must plead and prove them and ask the court if he deems proper to submit them to the jury by the instructions given on his behalf; but he cannot impose that duty upon the plaintiff.

The court in the Owens case accepted this view of the law, and in express terms overruled the Sullivan case and in doing so used this language:

"The instructions are to be taken as a whole, are so taken by men of common understanding, and can be understood in no other way. There is no necessity for *qualifying each by an express reference to the others.* They thus qualify themselves, when in the form these instructions are. The contrary ruling in Sullivan v. Railroad, 88 Mo. 182, is not to be followed."

The plaintiff's instructions do not in mandatory language tell the jury to find for him, nor do those of the defendant tell them to find for the defendant; but do tell them that if they find the facts to be as stated in the petition to be true, as plaintiff's evidence tends to show, then they will find for him; but upon the other hand that if they find the facts to be as contended for by defendant, then they will find for him. Clearly there is no conflict between the two for the reason that if the jury find for the one, they must necessarily find against the other, as this court has many times so held.

The same question was presented again in the case of Meily v. Railroad Co., 215 Mo. 567. On page 587 this court said:

"Appellant assails the correctness of instruction numbered one given by the court in behalf of the respondent, for the reason assigned, that while it purports to cover the whole case it omits one of the defenses pleaded in the answer, namely, assumption of risk.

"We have been cited to no authority sustaining the position assumed by counsel for appellant, and we have been unable to find any case in this State lending color to that contention, excepting the case of Sullivan v. Railroad, 88 Mo. 169. In that case by a divided court (Norton and Black, JJ., dissenting), it was held that an instruction which embraced all the facts which were necessary to be found by the jury, before the plaintiff would be entitled to recover, must also tell the jury that before a recovery could be had the jury must also find that the plaintiff was not guilty of contributory negligence. But no case has been found in this State or elsewhere, going to the full extent contended for by learned counsel for appellant; nor is the doctrine announced in the Sullivan case any longer the law of this State. That case has been overruled many times in express terms by this court, among which are the following: Owens v. Railroad, 95 Mo. 169; Dougherty v. Railroad, 97 Mo. 1. c. 661; Burlington Bank v. Hatch, 98 Mo. 1. c. 379; Reilly v. Railroad, 94 Mo. 600; State ex rel. v. Hope, 102 Mo. 1. c. 426; Burdoin v. Trenton, 116 Mo. 1. c. 372; Hughes v. Railroad, 127 Mo. 1. c. 452; Meadows v. Life Ins. Co., 129 Mo. 1. c. 97; Anderson v. Railroad, 161 Mo. 1. c. 427."

And in Lange v. Mo. Pac. Ry. Co., 208 Mo. 458, 1. c. 478, this court said:

"The third objection to this instruction is that it ignores the question of contributory negligence. While that is true, yet that question was presented to the jury in instruction numbered three given for respondent, which properly submitted that issue to the jury. [Schmitz v. Railroad, 119 Mo. 256, 1. c. 269 and 276, Court in Banc; Baker v. Railroad, 147 Mo. 1. c. 168;

Blackwell v. Hill, 76 Mo. App. 53; Lange v. Railroad, 115 Mo. App. 589.]''

The same rule is announced in Anderson v. Union Terminal Ry. Co., 161 Mo. 411, l. c. 428; Meadows v. Life Ins. Co., 129 Mo. 76, l. c. 97; Hughes v. Railroad, 127 Mo. 447, l. c. 452.

In State ex rel. v. Hope, 102 Mo. 410, l. c. 426, this court in discussing this question said:

''The point of the only objection urged against plaintiff's instructions is that they authorize a verdict for plaintiff upon his theory of the facts in the case, without embracing in the same instructions other facts constituting defendant's theory of the case. If, however, the legal propositions they contain are correct (and this is not disputed), and defendant's theory was properly presented to the jury in their own instructions, this mode of instruction would not furnish cause for reversal. [Owens v. Railroad, 95 Mo. 169; Burlington First Nat. Bank v. Hatch, 98 Mo. 376; Dougherty v. Railroad, 97 Mo. 647.]''

And in Dougherty v. Railroad Co., 97 Mo. 647, l. c. 661, this court said:

''The fifth given for plaintiff is complained of for the reason that it ignores the contributory negligence of plaintiff, and authorizes and directs a verdict for plaintiff, without regard thereto. A similar omission in an instruction of this sort was held fatal error in the case of Sullivan v. Railroad, 88 Mo. 169, but the doctrine of that case has recently been overruled in the late case of Owens v. Railroad, 95 Mo. 169, and upon the authority of the Owens case just cited, and under the views there adopted by a majority of my associates, the omission of the defense of contributory negligence from the instruction under review is not to be regarded as fatal error, requiring a reversal of the judgment in the cause.''

The same rule is announced in Burlington Nat. Bank v. Hatch, 98 Mo. l. c. 378-9.

The case of Owens v. Railroad, supra, has been cited and followed by the courts of appeals in more than fifty cases, saying nothing about other cases cited, by those courts announcing the same rule.

It seems to me that the law as thus announced by this court and the courts of appeals should be followed and forever put this question at rest; if not, then they should be overruled in terms so they will no longer mislead the bench and bar, and act as pitfalls into which the profession and litigants must and will stumble and fall.

This court was led into an erroneous ruling in the case of Sullivan v. Railroad, supra, by following the decisions of courts where the law of their States requires the plaintiff to allege and prove that he was free from contributory negligence; under such a law it was perfectly proper for such courts to hold that the instruction given for the plaintiff should call the attention of the jury to the question of contributory negligence for the reason that it was a part of the plaintiff's case, but not so in this State, where contributory negligence is purely a matter of defense, and must be pleaded and proven by the defendant to be available.

II. The second ground for my dissent in this case is that the majority opinion holds that the opinion of Dr. McCandless given to the plaintiff, regarding the condition of his arm, was not the statement of an opinion merely, but "was the statement of a fact."

Our learned associate cites some very respectable authority which seems to support him in that statement, nevertheless, I dissent from it, because the expression of an opinion, by a doctor regarding the condition of a person, is not the statement of a fact, but is, in the very nature of the case, nothing more or less than the opinion of the doctor who gives it, and the opinions of all courts in Christendom to the contrary will not

change the fact that an opinion is an opinion, and not a fact.

I have often heard that for all practicable purposes a court could decide that black is white, but this is the first time in my life where I have seen in black and white that principle decided by a court.

However, I for one, intend to cling to the old idea, that an opinion is but the judgment or belief of the party who gives expression to it; and in my judgment the character of the opinion is not metamorphosed in a fact because perchance it is expressed by an expert upon the subject in question. The knowledge and wisdom of the person giving the opinion, if honest, adds weight to; but does not change the character of the expression. No doctor on earth can state as a fact what will be the result of a certain injury received, not even of a pin scratch. Ordinarily a doctor, or anyone else, for that matter, would tell you that such an injury would be trivial and would soon heal, but how often have we seen and heard of injuries no more serious in character prove fatal, even under the care and treatment of the most learned and skilled physicians of the land.

That is common knowledge and everyone knows it; and there is not a man or woman, with ordinary intelligence, who does not know that when he or she consults a physician, he will only express an opinion as to his or her condition, and all the assurances the physician may offer that he knows what he is talking about will not deceive him or her in the least in that regard, and if pressed too far, it is more than likely such assurances will cause them to consider him a quack, and instead of trusting him, will lose all confidence in his opinion and respect for his word. In other words, such matters are not embraced within the field or scope of human knowledge, but rest in opinion only, the same as the opinion of a lawyer. No man knows the law.

With these preliminary observations, let us consider the plaintiff. He testified that he went to Dr. McCandless and stated to him that he had sustained an injury through the negligence of the defendant, and that he was thinking of settling with the company for the damages received in consequence thereof, and told him that he wanted his honest opinion as to his condition, in order to fix the amount of the damages. In response thereto, he further testified that Dr. McCandless said, "Young man, I will guarantee you will have a good arm inside of six months," and that the doctor further told him that there was a perfect union of the bone of the arm, which of course was but an opinion, as he could not see that fracture or its condition.

This language of the doctor must be construed in the light of the facts and circumstances that existed at the time he gave expression to it. The plaintiff did not ask the doctor to guarantee that he would have a good arm in six months or within any other period of time; consequently he was not expecting a guarantee, but asked him for *his honest opinion* as to his condition, and that was what he expected and what he received. The plaintiff never relied upon the guaranty, but upon the opinion. The expression of the doctor, that he would guarantee that plaintiff's arm would be as good as ever in six months, was made by him for the purpose of giving force and character to his opinion, and not in the sense that he was insuring the plaintiff's arm in that regard, and the latter knew that the doctor used the word "guarantee" in that sense. While the use of that word, by the doctor might and probably did have weight with the plaintiff, nevertheless, he understood and knew that the doctor was expressing only his opinion as to his condition; and upon that opinion he settled with the company.

In effect, it is contended in this suit, that the doctor's opinion was in fact a guaranty that the fractured

arm had perfectly united and would be completely well within six months, and that the defendant is bound by that guaranty.

This contention is untenable for two reasons: first, because, as before stated, neither the doctor nor the plaintiff understood that the opinion was to operate as a guaranty; and, second, because if the plaintiff so understood it to be such, still he would not be entitled to a recovery for the reason that there is no evidence in this record which tends to show that the doctor had authority to make a contract of guaranty for the defendant, and having no such authority, if he makes such a guaranty, then he would be personally liable thereon; but who would ever think of suing him on such a pretended contract of guaranty? He and everyone else would say it was his opinion.

In short, the plaintiff asked the doctor for an honest opinion as to his condition, and the doctor, so far as this record shows, gave him an *honest opinion,* and now since he was mistaken in that opinion, if he was, the plaintiff now seeks to set aside the settlement and hold the defendant liable for the original injury.

If the petition had charged and the plaintiff had proven by the evidence that the opinion of Dr. McCandless was false and was knowingly and fraudulently made for the purpose of injuring the plaintiff and that it did so, quite a different question would be presented; but there is not a word of evidence in this case that tends to show that Dr. McCandless falsely, knowingly or fraudulently gave his opinion as to the condition of the plaintiff.

Under this state of facts, this case falls clearly within the rule of law announced by this court in the cases of McFarland v. Railroad, 125 Mo. 253, and Homuth v. Street Ry. Co., 129 Mo. 629.

That being true, the court should have sustained a demurrer to the evidence, unless there was other evi-

dence to carry the case to the jury upon that point, of which I express no opinion.

For the foregoing reasons I dissent from the majority opinion; but believe that the judgment of the circuit court should be reversed and the cause remanded for a new trial in conformity to the views herein expressed. *Walker, J.,* concurs in paragraph one.